ALBANY,
August, 1814.

JACKSON
v.
STAATS.

JACKSON, *ex dem.* A. J. STAATS, *against* I. AND A. STAATS.

THIS was an action of ejectment for an undivided share of land in possession of the defendants, in *Kinderhook*, tried before Mr. Justice *Van Ness*, at the *Columbia* circuit, in *September*, 1813, when a verdict was taken for the plaintiff, subject to the opinion of the court on the following case:

*Abraham Staats,* the second, on the 24th *September*, 1731, made his last will and testament, and soon after died, seised in fee of the premises in question. By this will the testator devised to his wife, during her widowhood, all his farm, orchards, barns, lands, &c. and all his goods, &c. To his eldest son, *Abraham*, his heir at law, he bequeathed twelve shillings; and devised to his four sons, *Abraham, Johannis, Isaac,* and *Jacob,*

A. devised to his wife his farm, orchards, &c. during her widowhood; to four of his sons, 400 acres of land, &c.; to his five daughters, 60 acres of wood land, each; to S. and J., two of his sons, and their heirs, after the death or marriage of his wife, his dwelling-house, orchards, &c. and all his lands, except what he had before given to his sons

and daughters, provided that the said S. and J. should maintain their brother A. and their unmarried sisters, &c. and he then devised, as follows: " I give and bequeath to *Catharine* and *Sarah*, each, the sum of twelve pounds, out of my personal estate, and the remainder to be equally divided among my eleven children; and if any one or more happens to die without heirs, then his or their parts or shares shall be equally divided among the rest of the *children;* and also the money of my father-in-law, J. W. belongs to my wife;" and then appointed his executors, &c. It was held, that the devise over applied to both the real and personal estate, and was good by way of *executory devise.* That the devise ever made *in fee,* and that though J., the last surviving child, died without issue, the *grandchildren* of the testator could not take the estate. Though there is no one to take under an executory devise, the esta'e does not, therefore, revert to the right heirs of the testator. A deed from A. to B. *habendum,* to A. for life, and after his death, to B., his heirs and assigns, for ever, is a valid conveyance under the statute of uses, as a covenant by the grantor to stand seised to his own use, during life, and after his death to the use of the grantee and his heirs.

the four hundred acres of land conveyed to his father by *Thomas Duncan*, on the 4th of *November*, 1635. To each of his *five* daughters, *Maria, Catharine, Sarah, Elizabeth*, and *Elsie*, he gave 60 acres of wood land, in fee. The testator gave to his two other sons, *Samuel* and *Joachim*, and their heirs, after his wife's decease or marriage, his dwelling house, barns, orchards, &c. and all his lands, &c. except what he had already given to his sons and daughters, provided the said *Samuel* and *Joachim* should be bound 'to keep and maintain their said brother *Abraham*, until the Lord should give him a perfect mind and memory ; and also keep and maintain their unmarried brothers and sisters, provided they assist them in their labour. The testator also gave all his lands on the flats, after his wife's death or marriage, to his six sons, by name, share and share alike ; and directed all his debts, &c. to be paid out of his personal estate. The testator further devised, as follows : " I give and bequeath to *Catharine* and *Sarah Staats*, the sum of twelve pounds, each, out of my personal estate, and the remainder to be equally divided among my eleven children ; and if any one or more happens to die without heirs, then his or their parts, or shares, shall be equally divided among the rest of the children ; and also the money of my father-in-law, *J. Wendell*, belongs to my wife."

The premises in question were included in that clause of the testator's will, by which he devised to his two sons, *Samuel* and *Joachim*, " his dwelling house, barns, orchards, and all his lands, except what he had already given to his sons and daughters." *Joachim* died without issue, in the year 1795, on the premises in question, which he had possessed since the death of his father, in common with the representatives of *Samuel*. *Jacob* and *Elizabeth* died without issue in the life-time of their father. *Elsie* died after her father, leaving two children, *Hendrick* and *Catharine*, the former of whom died without issue ; the latter died, leaving issue, who died without issue. *Johannis* was the grandfather of the defendants, and *Isaac* the father of the lessor of the plaintiff. *Isaac* died before *Johannis*, in 1784, and left one son, the lessor of the plaintiff, and three daughters, and, by his last will, devised to his son, the lessor, as follows : " All my movable estate, orchards, barns, houses, outhouses, together with all my lands that I now have in possession, or in

any wise claim, or hereafter may claim or own, be it where it may be found."

It was proved by the defendants, that the lands in the old patent, southwest of the house, had been in possession of the defendants and their father above forty years, and had been actually cleared. *Abraham*, the eldest son of the testator, died long before the old *French* war, and *Maria* died before the late revolutionary war, intestate and without issue; *Johannis* and *Isaac*, the surviving devisees of the new patent, retaining possession thereof. The defendants gave in evidence a deed from *Elsie* and her husband, dated the 25th of *March*, 1790, to *Abraham Staats*, the father of the defendant, conveying all the lands she acquired under the will of her father, and which have since been uninterruptedly held under that conveyance. *Sarah* died before the revolutionary war, without issue.

The defendants also gave in evidence a release from *Samuel Staats*, to *Joachim Staats*, dated the 16th of *January*, 1749, of one undivided moiety of the lands devised to them by the will of their father; and a like release of the same date, from *Joachim* to *Samuel*, and which were witnessed by *Isaac*, the father of the lessor of the plaintiff.

The defendants also produced a deed from *Joachim Staats* to his cousin, *S. G. Van Schaick*, dated the 5th of *July*, 1755, for the consideration of natural love and affection, and also 50 pounds, of all the lands in the first patent, to hold to *Joachim* for life, and after his death, to the said *S. G. Van Schaick*, in fee. The defendants also gave in evidence the last will of *S. G. Van Schaick*, dated the 6th of *June*, 1772, devising the premises last mentioned to his two sons, *Gosen* and *Myndert*.

*Van Buren*, for the plaintiff, stated the points raised by him on the case, and the authorities by which they were supported.

1. The devise over applies to the real as well as the personal estate.

In *Doe* v. *Stopford*,* the testator directed, that if *any* of his children died under age, and without lawful issue, the share of him or her deceased should go equally among the survivors. It was held, that the word *share* comprised the leasehold as well as the personal estate.

In *Hardacre* v. *Nash*,† it was held, that the word "legacy" might be applied to the *real* estate, if the context or will showed

ALBANY,
August, 1814.

JACKSON
v.
STAATS.

* 5 East, 591.

† 5 Term Rep. 716. 1 Burr. 268.
Hope v. Taylor.

ALBANY,  that such was the testator's intention. The *intention* of the
August, 1814.  testator is the polar star to guide in the construction of wills.

JACKSON  All the provisions in the will in question, and its language
v.  throughout, clearly demonstrate, that it was the intention of the
STAATS.  testator to comprise his real as well as his personal estate. It
is the last clause, and was intended to make a complete disposi-
tion of the whole estate of the testator. The case of the execu-
* 10 *Johns.*  tors of *Moffat* v. *Strong*,* in this court, is perfectly analogous.
*Rep.* 12.

The devise over, then, being of the real, as well as of the per-
sonal estate, it took effect on the death of the first taker, and is
good by way of executory devise.

† *Cro. James,*  In *Pells* v. *Brown*,† decided in the 18 James I. there was
590;  a devise to *Thomas* and his heirs forever, paying to his bro-
ther *Richard* 20 pounds, at the age of 21 years ; and if *Thomas*
died without issue, living *William*, then *William* should have
those lands to him and his heirs forever, paying the said sum
*Thomas* should have paid. This was held to be a good limitation
of the fee to *William*, on the contingency, by way of execu-
tory devise. [The counsel cited, also, *Thurstout* v. *Denny*, (1 *Wils.*
270. 1 *Eq. Cases Ab.* 188.) *Sheffield* v. *Orrery*, (3 *Atk.* 282.)
*Hughes* v. *Sayer*, (1 *P. Wms.* 534.) *Pinbury* v. *Elkin*, (1 *P.*
*Wms.* 563.) *Atkinson* v. *Hutchinson*, (3 *P. Wms.* 258.) *Good-*
*title* v. *Pegden*, (2 *Term Rep.* 720.) *Wilkinson* v. *South*, (7 *Term*
*Rep.* 555.) *Roe* v. *Jeffery and others*, (7 *Term Rep.* 589.) *Fos-*
*dick* v. *Cornell*, (1 *Johns. Rep.* 439.) *Jackson* v. *Blanchan*, (3
‡ *See S. C.*  *Johns. Rep.* 292.‡) *Richardson* v. *Noyes*, (3 *Mass. Rep.* 56.)
6 *Johns. Rep.*
44.  2. All the children of the testator being dead at the death
of *Joachim*, and he dying without issue, the grandchildren took
under the will of the first testator, and the lessor, as one, is
entitled to the one fourth of a third. A provision for *children*
§ *Wythe* v.  extends to *grandchildren*.§
*Thurleton,*
*Ambl* 555.  3. *Isaac*, at his death, had an executory interest, which he
*Gale* v. *Bennet,*
*Amb.* 681.  could devise,‖ and by his will that interest passed to the lessor,
‖ *Jones* v. *Roe,*
3 *Term Rep.*88.  and gives him one third.
1 *Bl. Rep.* 225.
*Cas. temp. Tal-*  4. If *Joachim* took an estate *tail*, then his deed to his cousin,
*bot,* 117.  *S. G. Van Schaick*, in 1755, was void, and he continued te-
nant in tail, until 1782, when his estate tail was converted, by
the statute abolishing entails, into a fee simple, of which he died
seised, and the lessor is entitled to recover as one of his heirs
** *Cro. Eliz.*  at law.** But even if the deed to *Van Schaick* should not be
280. 895. 2 *Co.*
60. 2 *Ld.Raym.*  deemed inoperative, still the statute abolishing entails would
778.

not destroy the devise over, but the same would be good by way of executory devise.*

The court will make a construction in favour of an executory devise, to support the intention of the testator, if it can be done without violating the established rules at law.†

5. If the devise over does not apply to the real estate, then Joachim had a fee simple, his deed to *Van Schaick* was void, as creating a freehold to commence *in futuro*, and the lessor is entitled to recover as his heir at law.‡

*Vanderpool* and *Henry*, contra. 1. The last clause of the will, which is the only one which admits of dispute, we contend applies only to the personal estate. It has not, by any grammatical construction, any reference whatever to the realty. It speaks solely of the personal estate. The testator first gives 12 pounds to each of his two daughters, to be paid out of his *personal estate*, and then adds; immediately thereafter, the *remainder* to be divided equally among my eleven children; and if any one or more of them happens to die, &c. The word *remainder* applies to the last antecedent, which is *personal estate*.§

But if it is to be inferred from the whole scope of the will, that this clause refers to the real estate, yet it cannot refer to the premises in question. By giving to each of his daughters 60 acres of wood land in fee, the testator clearly shows his intention that they should have no more of his real estate. The premises in question are included in the joint estate given to his two sons, *Samuel* and *Joachim*; and on the construction contended for by the plaintiffs, this joint estate would be destroyed, and his daughters would come in for their shares. This clause could never have been intended to defeat the joint estate of the two sons. It begins and concludes with the disposition of the personal property. The will was made in 1731, and since that time the parties have acted in conformity with this construction.

2. But if this clause applies to the real estate; then we contend *Joachim* took an *estate tail*; or if he did not take an estate tail, that then the contingency of dying *without heirs*, meant an *indefinite failure of issue*, and the devise over could not be good by way of executory devise.

In *Tyte* v. *Willis*,|| where *A.* devised to *J.* for life, then to

---

*Margin notes:*

ALBANY,
August, 1814.

JACKSON
v.
STAATS.
* *Fosdick* v. *Cornell*, 1 *Johns. Rep.* 439.
† *Hopkins* v. *Hopkins*, *Cas. temp. Talbot*, 43.
‡ *Hogg* v. *Cross*, *Cro. Eliz.* 254. 5 *Co. Rep.* 94. 2 *Bl. Comm.* 165. *T. Raym.* 140. 151.

§ *Vin. Ab. Devise*, 226. pl. 22. 225. pl. 19. 9 *East*, 267.

|| *Talbot's Cases*, 1.

ALBANY,
August, 1814.

JACKSON
v.
STAATS.
* 1 P. Wms.
23.
† Cro. Jac. 22.
‡ Cro. Jac. 448.
§ Cro. Jac. 415.
‖ Cro. Eliz.
525.
** Cro. Jac. 290.
††Cro. Jac. 427.
‡‡Willes' Rep. 1.
§§ Willes, 164.

‖‖‖ 6 Cruise's
Dig. 270. Tit.
38. c. 12. s. 4, 5.

his son *G.* and his heirs, and if he died without heirs, then to his two daughters ; it was held that *G.* took only an estate tail. The same doctrine is laid down in *Nottingham* v. *Jennings,*\* *Tutterham* v. *Roberts,*†, *King* v. *Rumbull,*‡ *Webb* v. *Heavey,*§ *Soulle* v. *Gerard,*‖ *Browne* v. *Jerves,*\*\* *Dutton* v. *Eryram,*†† *Brice* v. *Smith,*‡‡ *Preston* v. *Fennel,*§§ and in many other cases.

Though a devise to a man and his heirs gives him an estate in fee simple, yet if the word *heirs* is qualified by any subsequent words, which show the intention of the testator to restrain them to the heirs of the body of the devisee, the devise creates only an estate tail.‖‖‖ Here, then, was a contingent remainder, and not an executory devise. In *Fosdick* v. *Cornell,* and the executors of *Moffat* v. *Strong,* this court recognise the principle, that the words *dying without issue,* mean an *indefinite failure of issue,* and the term *survivors,* was considered as taking those cases out of the general rule, and giving a different construction. The case of the executors of *Moffat* v. *Strong* applies, however, only to the personal estate, in regard to which there cannot be such a thing as an estate tail.

But grant, for the sake of argument, that the remainder over was good by way of executory devise. In 1749, *Samuel* and *Joachim,* by mutual deeds of release, conveyed to each other, in fee, and since that time the property has been uninterruptedly held by each, under that estate : and by our statute for abolishing entails, passed the 12th of *July,* 1782, (6 sess. c. 2.) and the act of the 26th of *February,* 1786,\*\*\*(9 sess. c. 12.)every species of estate tail, by devise, gift, grant, or other conveyance, without any exception or qualification, is abolished ; and by the second section of the act, the same effect is given to devises or conveyances by tenants in tail, as if they were, at the time, tenants in fee simple. We do not deny the common law, as to an executory devise, that it cannot be defeated or prevented from taking effect, by an act of the devisee ; but have not the legislature, by their act, so far altered the common law, and abolished estates tail created by way of executory devise, as well as by grant, or in strict remainder ? The reason or policy of the act is, that such estates or perpetuities, are contrary to the genius of our republican institutions.

\*\*\*1 Greenleaf,
Ed. Laws, 205.

3. Again, the devise over was only of an estate for *life,* and on the death of *Isaac,* it failed. Where words of limitation are added to a devise, and there are no other words from which it

can be inferred, that the testator intended to give an estate of inheritance, the devisee will take only an estate for life.*

In *Woodward* v. *Glassbrook*,† a person devised to his two sons, *I.* and *T.* and the heirs of their bodies, in equal moieties, and added, that if any of his said children should die before twenty-one, or unmarried, the part or share of him so dying should go over to the survivor. It was held, that the devise over was only of an estate for life. So in *Pettywood* v. *Cook*,‡ where *H.* being seised in fee of three houses, devised them to his wife for life; remainder of one to his son *R.* and his heirs; remainder of another to *C.* his daughter, and her heirs; and the remainder of the third to his daughter *S.* and her heirs; and added, that if any of them died without issue, then the survivors should enjoy *totam illam partem,* to be equally divided between them; it was held that the survivor took only an estate for life.

4. But should it be insisted, that the devise over was of an estate in fee, it may be said further, that the devise over is to " the rest of the *children,*" and so *grandchildren* cannot take.§

All the sons were dead in 1795; all the *children* died. *Joachim* dying after *Isaac,* and after the death of all his co-devisees, the executory devise on his death was spent. The *designatio personarum* failed. The estate would then descend to the eldest son and heir at law of *Abraham,* the eldest son of the testator, and who died, intestate, before the *French* war. It then vested in *Joachim,* the elder brother of *Abraham,* and who left issue, which are now living. The issue of *Isaac,* a younger brother, cannot take by descent.

Again, *Joachim* having, by operation of the statute abolishing entails, an estate in fee simple, he alienated this estate, by an operative deed, to *S. G. Van Schaick,* dated the 5th *July,* 1755. It is objected that the deed is void, as creating a freehold to commence *in futuro.* But the estate here was, by operation of the statute of uses, in *I.* for *life,* and a vested remainder was created. The *proviso* in the deed must be deemed void; and though the last limitation over is void, it does not avoid the first remainder created by the deed.

Again, it is objected that *Joachim* being a tenant in tail, he could not alienate, and so his deed to *Van Schaick* was void. But

ALBANY, August, 1814.

JACKSON v. STAATS.

* 6 *Cruise's Dig. Tit.* 38. ch. 13. s. 10. 16, 17.
† 2 *Vernon,* 388. *Cook* v. *Cook,* 2 *Vernon,* 545.
‡ *Cro. Eliz.* 32. 2 *Leon.* 129. 3 *Leon.* 180.

§ *Brown* v. *Pegs. Cro. Eliz.* 357 *Sir T. Raym.* 411. *Ventris,* 229, 230. 10 *Mod.* 370 to 378. 2 *Vernon,* 50. *Jackson* v. *Blanshan,* 3 *Johns. Rep.* 292. *S. C.* 6 *Johns. Rep.* 54. *Doe* v. *Provost,* 4 *Johns. Rep.* 61.

ALBANY,
August, 1814.

JACKSON
v.
STAATS.

* *Comyn's Rep.* 119. 121. 1 *Saund.* 260, 261. 3 *Burr.* 170 3.

† *Comyn's Rep.* 121.

‡ 5 *East,* 501.

the cases cited are all those of *covenants to stand seised to uses*; and the doctrine of those cases has no application to a bargain and sale made by a tenant in tail, which operates by way of *transmutation of possession.* If a tenant in tail bargains and sells to one and his heirs, the bargainee has a base fee, which is not determined by the death of the tenant in tail, but descends to the bargainee and his heirs, until the estate is avoided by the entry of the issue in tail;* and if the tenant in tail, after such bargain and sale, levies a fine to a stranger, such fine avails to make the estate of the bargainee good to him and his heirs; and if a tenant in tail, by bargain and sale, conveys to one and his heirs, to the use of himself for life, remainder to another, the remainder is good, by reason of the transmutation of possession.† But it is otherwise, where he covenants to stand seised to the use of himself for life, with remainder to another.

*Van Buren,* in reply, insisted that this was a devise to *Joachim* in fee, with remainder over, which was good, by way of executory devise; that the last clause overrides the whole will, and extends to all the estate, real as well as personal, so that *Isaac* and his heirs come in for their share of the estate. Had the devise over been intended to apply merely to the personal estate, it would have been expressed part or share, and not parts or shares. *Doe* v. *Stopford,*‡ where the word *share* was held to extend to the whole estate, is a case strongly in support of the construction for which we contend; and so are the cases of *Harducre* v. *Nash, Hope* v. *Taylor,* and *The Executors of Moffat* v. *Strong,* already cited.

Since the case of *Pell* v. *Brown,* decided in 1619, there are not three cases to be found, to support the technical rule, that " dying without issue" means an *indefinite failure of issue.* Courts have resorted to the slightest circumstances to prevent the operation of such a rule, which goes to defeat the intention of the testator. They rather say that the plain sense and intent of the testator ought to prevail. Then, although the existence of such a technical rule should be admitted in the construction of wills, courts will not presume that such was the intention of the testator, unless it should appear that he was acquainted with the technical rules of law on the subject. [Here the counsel particularly examined all the authorities cited in the opening of the argument.]

In *Fosdick* v. *Cornell*, the decisions of the *English* courts are recognised, and the court assented to the opinion of Lord *Kenyon*, in *Porter* v. *Bradley*, that the words dying without issue, or leaving no issue behind him, did not mean an indefinite failure of issue, but only of issue living at the time of the death of the first taker, and that there was no reason for any distinction in the rule of construction, as applied to the real or personal estate.

The case of *Richardson* v. *Noyes** is an authority to show that where the same words are used as to real and personal estate, the same rule of construction is to be applied. But if the estate over is an estate for life only, as has been contended, then there is an end to the position as to the indefinite failure of issue.

If this is an estate tail, it can only be one by implication; and it is true, that words in a will have been so construed as to give such an estate by implication. They *may be so* construed; but if there are other words in the will to show that the testator did not intend an estate tail, the court will not create one by implication.

Admitting it to be an estate tail, the statute abolishing estates tail, never intended to destroy all estates over by way of executory devise. The operation of the statute is not to be extended by construction. As far as it fairly goes, it sufficiently interferes with vested rights. The reason of the doctrine as to executory devises was, that estates over might be supported which could not exist as contingent remainders, for want of a particular estate to support them. And where a freehold, capable of supporting a contingent remainder, is by subsequent accident rendered incapable of taking effect at all, it has been held to enure as an executory devise, rather than the limitation should fail, for want of a freehold to support it.†

Again, the deed from *Joachim* to *Van Schaick* was inoperative and void. If a tenant in tail executes a deed or conveyance in order to defeat the estate, it is inoperative, and the estate remains in the tenant in tail;‡ and that the cases cited are those of covenant to stand seised to uses can make no difference. The reason is the same. *Joachim* sets down to convey away after his death, that is, after his estate has ceased, the estate given to the heirs of his body, in tail. At common law the deed would be void, because there could be no livery of seisin.

ALBANY,
August, 1814.

JACKSON
v.
STAATS.

* 2 *Mass. Rep.* 56.

† *Cas. temp. Tath* 44. 1 *Ves* 268. 1 *Atk.* 581.

‡ *Cases cited ante, and see Yel.* 51. *M___, 833. 1 Anders* 291.

The statute of uses was intended to supply a livery of seisin, but not in cases where there is no livery of seisin at common law. There is no use to which the possession could be transferred by the statute.

But we are told that the devise over was for life. In *Fosdick* v. *Cornell*, where the language of the will was similar, the court held that the devise over was in fee. In the preamble, the testator expresses his intention to dispose of his whole estate; and the same estate, that is, an estate in fee, before given to the devisee, goes over by the subsequent clause.* In *Wythe* v. *Thurston*,† the word children was held by Lord *Hardwicke* to extend to grandchildren and great-grandchildren; and in *Gale* v. *Bennett*,‡ Lord *Camden* expressed himself to be clearly of the same opinion.

It is said that this is a remainder, and not an executory devise; but it is not a vested remainder, and it cannot be a contingent remainder, for there is no particular estate to support it.

* *Jackson* v. *Merrill,*6*Johns. Rep.* 185.
† *Ambl.* 555.

‡ *Ambl.* 681.

SPENCER, J. delivered the opinion of the court. [After stating the facts in the case.]    It is to be inferred, though this case does not expressly state it, that all the children of *Abraham Stauts* the second, are dead; it is left uncertain from the case, which of the children of the testator, *Abraham Staats* the second, survived the others. *Joachim* and *Johannis* appear to have survived all their brothers and sisters, but the fact does not appear which of them survived the other, and this may be a very material consideration. It is stated in one of the points made by the counsel that *Joachim* survived all his brothers and sisters, and that fact will be taken for granted.

1. Does the devise over apply to the real and personal estate, or to the latter only?

2. Does the devise over create an estate tail, or does it operate as an executory devise?

3. If the devise was good as an executory one, would the grandchildren of the testator take under it, as the last holder, *Joachim*, died without issue?

4. If the devise over created an estate tail, was *Joachim's* deed, in 1755, sufficient to pass his interest?

1. We are bound to construe this will so as to carry into effect the intention of the testator, unless we are restrained by fixed and established rules of construction. In the present

case there are no such rules to fetter us, and we are to look at the whole will to find out whether the testator meant to devise over his personal estate only, or both personal and real. After several specific bequests of real and personal estate to his sons and daughters, and, in fact, after exhausting his real and personal estate by devises and legacies, he uses these expressions, " and if any one or more happens to die without heirs, his or their parts or shares shall be divided among the rest of the children." The only reason for confining this devise over to the personal estate is, that it immediately succeeds the devise of the remainder of the testator's personal estate to his eleven children. I know of no adjudged case, nor have I met with even a *dictum,* that a will is to be construed grammatically, or that an expression of the testator's will which reason, propriety, and his evident intention, would extend to all the antecedent subjects, shall be confined to the one immediately preceding. It is impossible to conjecture why the testator should devise over such parts of his personal estate, as any of his eleven children should die possessed of, without leaving an heir; and that with regard to his real estate, which, we must presume, was much more valuable, he should have no such intention.

The plain and natural intention of the testator was, that such parts of his estate as he had specifically devised, both real and personal, should go over to his surviving children on the contingency stated in the will. In the case of *The Executors of Moffat* v. *Strong,* (10 *Johns. Rep.* 13.) *Moffat* gave by his will certain specific parts of his real and personal estate to each of his sons, and directed the remainder of his moveable estate to be divided among his heirs, and then added, " and if any of my sons should die without lawful issue, then let his or their part or parts be divided equally among the survivors," &c.

In that case it was made a question whether the limitation applied to the *residuum* of the moveable estate, or whether it extended to all the previous devises to the son or sons who should so die. It was held that the provision being general in its language and object, the words did not, by any easy or natural construction, confine the limitation over to that part of the will. The two cases are perfectly alike in this respect, and must receive the same construction.

The case of *Doe, ex dem. Stopford,* v. *Stopford,* (5 *East's Rep.* 501.) is very much in point also; there the testator made specific devises to his sons in severalty, provision for his daughter and widow, and then gave the residue of his worldly effects to be divided amongst his three sons, and lastly, " if any of his said children died under age, and without issue, the share of him or her deceased should go equally amongst his surviving sons.'' Lord *Ellenborough* and all the judges held, that the word *share* in the last clause could mean only the entire fortune or portion before given. There are several other cases which might be added, but the intention of the testator, and the current of decisions, are too strong to require it. The limitation over must be applied to both the real and personal property devised.

2. The point, whether the limitation over operates as an executory devise, or to create an estate tail, admits of very little difficulty. The case of *Fosdick* v. *Cornell,* (1 *Johns.* 444.) is in point, that this is a good executory devise. There the words were, " that if any of my said sons, *William, Jacob, Thomas,* and *John,* or my daughter *Mary,* shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors, to be equally divided between them." The circumstances in the two cases are very parallel; and what weighed much with the court in that case exists here; the devise over was to the surviving devisees in his will, among whom were his daughters, to whom he had devised no part of his real estate. I believe none of us have ever doubted the correctness of the decision in *Fosdick* v. *Cornell;* and it would be a waste of time to review the authorities there cited.

3. It has been objected, that the devise over is not in fee, and that charging the devisees, *Samuel* and *Joachim,* with the keeping and maintaining their brother *Abraham,* would confer a fee under the first devise. The case of *Jackson, ex dem. Decker,* v. *Merrill,* (6 *Johns.* 185.) settles these questions. It was there decided, that charging the estate with payment of money in the hands of the devisees did not prevent its limitation over by way of executory devise; and the devise over of their *parts,* which in the hands of the first devisees was considered in fee, necessarily referred to the estate or interest before devised; and that the ulterior devise was clearly intended to be as extensive as the antecedent one.

I cannot but think the case imperfect as to some facts. I in-ALBANY, August, 1814.fer, however, from the course the argument has taken, not only that *Joachim* survived all his brothers and sisters, but JACKSON v. STAATS.that the plaintiff seeks to recover the part of land either devised to him, or of which he became possessed as such sur- vivor ; and then, under the words of the limitation, it becomes a question, whether, as the survivor, he had not a fee in the lands, which accrued to him as such; and, also, whether the word *children* shall be deemed to extend to grandchildren.

In *White* v. *Thurston,* (*Ambler,* 555.) by deed, an estate was directed to be sold, on failure of issue male of *A.* and the mo- ney to be equally divided among four persons, or the respec- *tive issue of their bodies ;* but if any one of them be dead at *that time,* (the failure of issue male of *A.*) to be equally di- vided among the survivors of them and their respective chil- dren, in case any of them be dead, having issue of their body. They all four died before the contingency happened ; one with- out issue ; one had a son living ; one had grandchildren, but no children ; and the fourth had children, grandchildren, and great-grandchildren, living. Lord *Hardwicke* held, that the word *issue* carried it to all descendants, and that the word *children,* in that case, which may admit of a more re- strained signification, should be extended to the children, grandchildren, and great-grandchildren ; and they took *per stripes,* and not *per capita.* In the case cited, it is manifest Lord *Hardwicke* determined it on the clear intention of the testator, that in case of a failure of issue male of *A.* the mo- ney was to be divided among the four persons, or the respec- tive issue of their bodies, in case any of them were dead on the happening of the contingency; and he considered the word *children* as used synonymously with the words *issue of their bodies.* This is not an authority for saying, that the word *children,* used as it was by the testator, meant grandchildren.

The next case relied on, is *Gale* v. *Bennet,* (*Ambler,* 681.) That case was governed by the case of *White* v. *Thurlton;* and grandchildren were admitted to inherit, because the testa- tor meant to let in the grandchildren, by using the word *issue,* as synonymous with children.

The next case is *Crooke and wife* v. *Brooking.* (2 *Ver- non,* 106.) *R. Mallock* gave to trustees 1,500 pounds, for

ALBANY,
August, 1814.

JACKSON
v.
STAATS.

such uses as he had declared to them, and by them not to be disclosed. One of them, by letter to the other, mentioned the trust, which was, that they, out of the profits, should allow *Anne Crew* a maintenance during her husband's life-time, and if he died before her, then she was to have the money ; but if her husband survived, the money to go amongst her sister's children, as she should advise. *Anne Crew* died in her husband's life-time, leaving only one sister, *Grace ;* but gave no directions or advice relative to the 1,500 pounds. *Grace* had only one child (the plaintiff) living at the death of *Anne Crew,* but had five children living at the death of the testator, *Mallock,* some of whom had children, who were parties to the suit; and the questions were, whether the plaintiff, being the only child living of *Grace,* at *Anne Crew's* death, should have the whole 1,500 pounds; or whether the administrators of the dead children, or the grandchildren, the children of the deceased children, should have a share.

Chancellor *Jeffries* decreed the money to be divided between the child living at the death of *Anne Crew,* and the children's children living at the death of *Anne Crew.*

Upon a rehearing before the Lords Commissioners, they decreed for the plaintiff, and were " clear of opinion, that where the devise is to children, the grandchildren cannot come in to take with the children ;" but all admitted, that if there had been no child, the grandchildren might have taken by the devise to the children,

The next case is that of *Clarke* v. *Blake,* (2 *Br. Rep.* 320.) The testator devised the premises in question, " to the use of such child or children of his brother *H. C.* whether male or female, as should be living at the time of his said brother's death, as tenants in common." The question was, whether *Bridget,* one of the children, being unborn, but *in ventre sa mere,* at the time of the testator's death, should take a share, or be excluded. Lord *Kenyon,* then master of the rolls, held that the child, *in ventre sa mere,* could not take, under a bequest to children, living at the time of the testator's brother's death. The Lord Chancellor *Thurlow,* expressed an inclination the other way, but made no decision.

The case of *Crooke* v. *Brooking,* concludes with an observation of the reporter, which, if correct and authoritative, as it is not, does

not apply to this case; " but all admitted, that if there had been no child, the grandchildren might have taken by the devise to his children." Sir *Thomas Reynolds*, in delivering his opinion in *Stead* v. *Burrier*, (*T. Raym.* 411.) says, the word *son* is never taken for *grandson*, no more than *child* is taken for *grandchild;* and in *Brown* v. *Peys*, (*Cro. Eliz.* 358.) all the court resolved, that where the devise was to one of *Richard Forster's* children, his child's child should not have it, for that it was out of the words. To the same purpose, also, are 10 *Mod.* 376. *Owen.* 88. *Ventris*, 229, 230.

The testator, in making the limitation over, never contemplated the case which has occurred; and when he says, " if any one or more happens to die without heirs, his or their parts or shares shall be equally divided among *the rest of the children,*" he, undoubtedly, by *the rest of the children,* refers to his own children, whom he had before named in his will. He died, not once thinking of his grandchildren; and it would be doing violence to his intention to say he did.

If this be so, then the last surviving child, whether he had issue or not, would retain, not only his share in the first devise, but also the shares which had accrued to him; for the estate devised to him was vested by the devise, and if no one could take under the executory devise, it would become inoperative, and could not devest him of what he had gained by the direct devise. It is, therefore, incorrect to suppose, that if there was no one to take under the executory devise, the estate would revert to the right heirs of the testator.

It is contended, that the deed from *Joachim Staats* to *S. G. Van Schaick*, was void, as it was to take effect *in futuro,* and that the lessor is one of the heirs of *Joachim*.

This is a very mistaken idea; and the cases of *Doe, ex dem. Wilbourne* and *Ux.* v. *Simpson*, and of *Roe* v. *Freeman* and others, (2 *Wils.* 22 and 75.) are directly in point, that this deed is good as a covenant to stand seized. The same point was adjudged in *Massachusetts*, (4 *Ting. Mass. Rep.* 136.) and expressly in *Jackson, ex dem. Trowbridge*, v. *Dunsbagh*, (1 *Johns. Cases*, 91.) We are of opinion that the defendants must have judgment.

VAN NESS, J. concurred in the opinion, that the defendants were entitled to judgment, on the third point stated by Mr.

ALBANY,
August, 1814.

GRAHAM
v.
Com. Ins. Co.

Justice *Spencer*, and declined giving any opinion on the other points in the cause.

PLATT, J. not having heard the argument of the cause, gave no opinion.

Judgment for the defendants.