Lintner *v.* Snyder.

---

## HANNAH LINTNER *vs.* SNYDER and DIEFENDORFF.

A testator by his will, executed previous to the revised statutes, gave and devised to his son David 125 acres of land, undivided. After devising real estate to his other sons, the testator, by the ninth clause of his will, directed as follows: " I hereby particularly order, and the above devises are upon this condition, viz, if one or more of my said sons shall die without lawful heirs, then his or their portion of real property herein devised to him or them respectively shall go to and become vested in the survivor or survivors of said sons, his or their heirs or assigns, as tenants in common." *Held*, that by the ninth clause of the will valid executory devises were made; and that upon the death of David in the lifetime of his brothers,

without leaving lawful issue, the devise to him vested in his surviving brothers, as tenants in common, in fee.

*Held also*, that during the lifetime of David, his brothers had such an inter‐ est in the land devised to him, as could be released to David. And they all having united in a quitclaim deed to him, in fee, *held* that the absolute fee became vested in David, thereby.

*Held further*, that such quitclaim deed was a release by the persons in whom the estate by possibility might vest in possession as an executory devise, to the party in whom the fee was then vested, subject only to be defeated by his death without issue. And that it operated by way of enlargement of the estate of the releasee.

A person having a present right, though not to take effect in possession un‐ til the happening of a future event, may release such right to the one in possession.

THIS action was commenced in October, 1850, and was brought to recover a piece of land in Montgomery county. The complaint stated that in December, 1845, Abraham Lintner the plaintiff's late husband, deceased, George Lintner and John Lint‐ ner, were joint owners of a farm in Minden, in Montgomery county, in Lansing's patent, describing it by metes and bounds, containing 106 $\frac{8}{100}$ acres of land, more or less. In December, 1845, George Lintner instituted a suit in the Montgomery com‐ mon pleas for the partition of the said land between himself and the said Abraham and John. Pending the suit, Abraham died, having first duly made his last will and testament, by which he devised to the plaintiff, his wife, all his estate, real and personal, so long as she remained unmarried. The plaintiff was after‐ wards substituted as a party in the partition suit in place of her husband, and the partition suit was brought to judgment in July, 1847. The premises were divided into three portions, one of which was allotted to the plaintiff and was described by metes and bounds, and contained 34 acres and $\frac{82}{100}$. The com‐ plaint asserted that the defendant William Snyder was in pos‐ session, and that the defendant Charles Diefendorff claimed to be the owner by a title in hostility to that of the plaintiff. It demanded as relief that the defendants might be adjudged to surrender the possession to the plaintiff and to pay damages and costs. The answer of Charles Diefendorff denied that Abraham Lintner, the plaintiff's husband, George Lintner and

John Lintner ever had any title to the premises, and if they ever had, that it was subject, except George Lintner's part, to the lien or incumbrance of a mortgage, executed by David Lintner on the 24th August, 1844, to Jacob P. Fox, to secure the payment of $300, recorded 9th September, 1844, which was foreclosed at law on the 18th of June, 1846, when David Diefendorff become the purchaser and received a deed of the same premises; and the said David and his wife, on the 12th August, 1846, conveyed the same in fee to the defendant Charles Diefendorff, and afterwards, on the 9th September, 1847, George Lintner and Eve his wife conveyed to the defendant Charles Diefendorff, by warranty deed, the undivided third part of the premises first described in the complaint; and insisted that by virtue of said deed he owned the premises, and that the other defendant was his tenant. The answer denied the proceedings in partition, and denied that the plaintiff as devisee of Abraham Lintner, or otherwise, was the owner of the said premises or entitled to the possession. It was averred that David Lintner at the time he gave the mortgage to Fox was the owner in fee, of the undivided two-thirds of the premises, and George Lintner of the other third. The answer of Snyder was merely an answer as tenant, and related to the possession.

The reply of the plaintiff denied that the title was ever subject to the mortgage given by David Lintner to Fox. It denied that David Lintner, on the 24th of August, 1844, had an absolute estate in fee simple in the undivided two-thirds of the premises mentioned in the complaint, but on the contrary alleged that his only estate was an estate in fee, determinable upon his death without issue, and that he died without issue. The reply denied the residue of the answer. The parties entered into a stipulation by which they admitted that the premises claimed in the complaint were a part of the lands devised to the said David Lintner, by the will of John Lintner deceased, by item 6th of said will and that they were also the same as were described in a quitclaim deed dated June 4, 1838, executed by Abraham Lintner and Hannah his wife, (the plaintiff,) and Eve Lintner the wife of George Lintner, and John Lintner and

Martha his wife, to David Lintner, duly acknowledged and recorded in December, 1842. The same premises were mortgaged by David Lintner to Jacob P. Fox, on the 24th August, 1844, and the mortgage was foreclosed 18th June, 1846, and David Diefendorff became the purchaser for $55, and conveyed the same on the 11th August, 1846, to the defendant, Charles Diefendorff, who together with Snyder his tenant had since been in possession. The same premises were also described in the record of a partition made in the Montgomery common pleas in July, 1847, one third part whereof was allotted to the plaintiff as devisee of Abraham Lintner, and another third part to George Lintner, which last third part was conveyed by George Lintner to the defendant Charles Diefendorff. The last will of John Lintner, dated 11th April, 1827, was admitted in evidence. It was proved before the surrogate in May, 1827. The sixth item, containing the devise to David Lintner, is thus : "I give and devise to my son David, his heirs and assigns forever, one hundred and twenty-five acres more or less and undivided, situate in Minden and in Livingston's patent, near the farm formerly occupied by my deceased brother George Lintner," &c. ; (embracing the premises in dispute.) After devises to his other sons, the will proceeded, *ninthly*, thus : "I hereby particularly order, and the above devises are upon this condition, viz, if one or more of my said sons shall or may die, without lawful heirs, then his or their portion of real property herein devised to him or them respectively shall go to and become vested in the survivor or survivors of said sons, his or their heirs and assigns, as tenants in common."

It was admitted that the said David Lintner died without issue, in February, 1845. The question was whether the plaintiff, as devisee of Abraham Lintner, her deceased husband, was entitled to recover.

*H. Adams*, for the plaintiff.

*S. Belding, Jun.* for the defendants.

*By the Court*, WILLARD, P. J. The will of John Lintner took effect by the death of the testator in May, 1828, a short time after it was executed. The rights of the parties must be governed by the law as it then stood. Chapter one of part two of the revised statutes was not passed until December 10, 1828, and by the act relative to the revised statutes, it did not take effect until the 1st January, 1830.

In *Jackson* v. *Staats*, (11 *John*. 337,) the will, after devising several pieces of real estate to the testator's children by name and to their heirs, had this clause: " And if any one or more happens to die without heirs, then his or their parts or shares shall be equally divided amongst the rest of the children." This was held to be a valid executory devise. The devise to the first taker created a fee, liable to be defeated, on the death of the devisee without issue. The same doctrine was held in *Fosdick* v. *Cornell*, (1 *John*. 439 ;) *Jackson* v. *Blanshan*, (3 *Id*. 292 ;) *Moffat* v. *Strong*, (10 *Id*. 12 ;) *Anderson* v. *Jackson*, (16 *Id*. 382 ;) *Wilkes* v. *Lion*, (2 *Cowen*, 333 ;) *Cruise's Dig*. *tit*. 38, *ch*. 17, *passim*.

According to the doctrine of the above cases, on the death of David Lintner without lawful issue, the devise to him vested in his surviving brothers as tenants in common, in fee. And of course, if he had acquired no other estate in the land, the mortgage given by him to Fox in August, 1844, became ineffectual on his death in February, 1845. He could mortgage only such estate as he had, and as that terminated by his death without issue, his brothers took the estate under the executory devise, clear of the mortgage.

But Abraham Lintner and the other brothers of David Lintner, on the 4th June, 1838, united in a quitclaim deed to the latter, in fee, of all their right and title to the premises; and the important question in the case is, whether that instrument passed the contingent estate of the grantors, to the said David. If it did, the plaintiff has no title to the land, and the same is vested in the defendant under the statute foreclosure of the mortgage given by David to Fox in 1844.

The plaintiff's counsel contends that Abraham Lintner had

" no interest in possession or right certain to be conveyed ;" and he likens it to the case of a conveyance by a son, of his expectancy, during . the lifetime of his father. Such conveyance is clearly inoperative. (*Jackson* v. *Bradford*, 4 *Wend.* 619. *Tooley* v. *Dibble*, 2 *Hill*, 641.) But the cases are not analogous. David Lintner took an estate in fee under the will of his father, liable to be defeated on his death without issue, in which case it vested by the terms of the will as an executory devise in his surviving brothers. Those brothers had such an interest, in 1838, as could be released to David Lintner in fee. And all having united in the conveyance, the absolute fee simple became vested in him. That estate passed under the mortgage foreclosure, and became vested in the defendants.

The quitclaim deed given by Abraham Lintner and wife and the other brothers of David Lintner, to the latter, in fee, in June, 1838, was a release by the persons in whom the estate by possibility might vest in possession as an executory devise, to the party in whom the fee was then vested, subject only to be defeated by his death without issue. It falls under the third class of releases mentioned in the books, and operates by way of enlargement of the estate of the releasee. (*Cruise's Dig. tit.* 32, *ch.* 6, § 28. *Litt.* § 465. *Touchstone*, 320, 325, 326.) There was the requisite privity between the releasors and releasee. The releasors had a present right, though not to take effect in possession until the happening of a future event. Such a right may be presently released to the person in possession. (*Co. Lit.* 365 *a. Cruise's Dig. tit.* 32, *ch.* 6, § 19.) The defendant is entitled to judgment.

Judgment for the defendant.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]