## CHARLES GROVES v. MARY ANN COX.

1. A devise indeterminate in its terms, and without words of limitation, which, standing alone, would create only an estate for life, will be enlarged to a fee by the imposition of a charge upon the person of the devisee, or on the *quantum* of the interest devised to him.

2. But the foregoing rule is a rule of construction only, founded on the presumption that the testator, in imposing the charge, intended to give a fee, and will be inoperative to enlarge the estate to a fee where an estate is given for life in express terms, or an estate tail, or some other determinate estate is expressly given, or arises by necessary implication from the language of the devise over.

3. The testator, in one clause of his will, devised certain premises to his son, upon condition that he pay to the four daughters the sum of $300 each. By a subsequent clause, he declared that "it is my will that should any of my children die without issue, such share or shares to be equally divided amongst the surviving heirs." *Held*—

   1. That the son took an estate in fee simple conditional, with a limitation over, by way of an executory devise, to the surviving heirs.

   2. That his estate was determinate and defeasible on the happening of two events: (1) his death without issue, and (2) the survivorship, at his death, of some one or more persons entitled, under the designation of "the surviving heirs," to take the estate under the executory devise.

This case was certified by the Circuit Court, to obtain the advisory opinion of this court upon the construction of the following will:

"In the name of God, Amen. I, James Perrine, of South Brunswick, in the county of Middlesex, and State of New Jersey, being weak in body, but of sound mind and memory, thanks be given to Almighty God therefor, calling to mind the mortality of my body, and believing it is once appointed for all men to die, do now make and ordain this my last will and testament; and first of all I recommend my soul to God, who gave it, and my body to the earth, to be buried in a decent and Christian-like manner, at the discretion of my executors hereafter named; and as for my worldly estate wherewith it has pleased God to bless me with in this life, I

give and dispose of the same in manner and form following, dated this 11th day of January, 1811.

"*First.* I will and ordain that all my funeral charges and just debts be first paid, in money arising out of my estate, by my executors.

"*Second.* I give unto my wife Rebecca all my plantation where I now live, as long as she lives, and she shall have half of the profits that is made on said farm. My son James is, according to my will, to provide and support his mother, and to take charge and support what beasts she may think proper to keep for her own use during her lifetime, and also to cut and draw what firewood his mother may want, from time to time, during her lifetime.

"*Third.* It is my will that my beloved wife should take the care and charge of my son Samuel, during her lifetime, and after her decease, if Samuel should survive, then my son James to support said Samuel, during his life, from the proceeds of the farm.

"*Fourth.* I give and bequeath unto my son James all the land and old orchard laying on the east side of the Brunswick road, opposite to my house; but not to sell the same during his mother's lifetime without her consent.

"*Fifth.* It is my will that my son James is to have the farm where I now live, upon the following conditions, that is to say, to my daughter Hannah, Rebecca, Caty, Rachel and Abbey, to each respectively the sum of three hundred dollars *each;* my son James to pay two hundred dollars yearly in one year after my decease, till the whole is paid.

"*Sixth.* I give unto my beloved wife all my movable estate, to dispose of at her pleasure after my decease.

"*Seventh.* I will and bequeath to my grandchildren hereafter named, that is, James Hull, Letty Hull, Rebekah Hull, all my *my* farm situate, lying and being near Lake George, in the county Tryon, and State of New York, which said tract was conveyed to me by deed bearing date 28th day of January, 1779, being two hundred and fifty acres, more or less, by Daniel Perrine, to be divided between them, share

and share alike, to them and their assigns forever, and to take the title as I have done for the same, my executors to deliver the said title to any one of the above-named persons who may be authorized to claim the same.

"*Eighth.* It is my will should any of my children *dye* without *isue*, such share or shares to be equally divided amongst the surviving heirs.

"*Ninth.* I further nominate, constitute and appoint my son-in-law, Jno. Mount, James Disbrow, and my son, James Perrine, to be executors to execute this my last will and testament."

Argued at November Term, 1877, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *Woodbridge Strong.*

*Contra, A. V. Schenck* and *A. G. Richey.*

The opinion of the court was delivered by

DEPUE, J.  The will of the testator was made on the 11th of January, 1811, and was proved April 27th, 1811.

The premises in controversy are those mentioned in the second and fifth articles of the will.

James Perrine, Jr., survived the testator, and entered into possession of the premises immediately after his father's death, and paid to the testator's daughters the sum of $300 each, as required by the fifth clause of the will, and fulfilled all the charges upon him contained in said will.

The plaintiff makes a title derived from the heirs-at-law of the testator.  The defendant claims under a devise to her by the will of James.

The Circuit Court certified unto this court, for its advisory opinion, the two questions—*First.* Whether James Perrine, Jr., under the will of his father, took an estate in fee in the premises; and, *Second.* Whether his estate therein ended at his death without issue.

The quantity or duration of the estate of James is not expressly defined in the fifth clause. At common law, such a devise, standing by itself, would only give an estate for life. But a devise indeterminate in its terms, and without words of limitation, which, standing alone, would create only an estate for life, will be enlarged to a fee by the imposition of a charge upon the person of the devisee, or on the *quantum* of the interest devised to him; but not if the premises are merely devised subject to a charge. *Hawkins on Wills* 134; *Spicer* v. *Spicer*, *Cro. Jac.* 527; *Pickwell* v. *Spencer*, *L. R.*, 6 *Exch.* 189; *S. C., L. R.*, 7 *Exch.* 105. Where the charge is on the estate, and there are no words of limitation, the devisee takes an estate for life only, but where the charge is on the person of the devisee in respect of the estate in his hands, he takes a fee by implication. *Jackson* v. *Bull*, 10 *Johns.* 148. If the charge be on the person of the devisee, the amount is unimportant, if the sum is to be paid absolutely. Thus, in *Collier's case*, 6 *Rep.* 16, a devise to testator's brother, paying to one twenty shillings, and to others small sums, amounting to forty-five shillings in all, the land being of the value of £3 per annum, was held to give a fee to the brother, for "after payment he may die before satisfaction, and therefore it is a fee simple; for the law doth intend that the devise was for his benefit and not for his prejudice."
"It has," says Mr. Jarman, "been long settled that where a devisee whose estate is undefined is directed to pay the testator's debts or legacies, or a specific sum in gross, he takes an estate in fee, on the ground that if he took an estate for life only, he might be damnified by the determination of his interest before reimbursement of his expenditure; and the fact that actual loss is rendered highly improbable by the disparity in the amount of the sum charged relatively to the value of the land, does not prevent the enlargement of the estate." 2 *Jarman on Wills* 171; *Wellock* v. *Hammond*, *Cro. Eliz.* 204; *Jackson* v. *Merrill*, 6 *Johns.* 186. The payment of $300 to each of the testator's five daughters, by the fifth

clause, is a charge of a sum in gross upon the devisee, within the meaning of this rule.

But the rule above mentioned is a rule of construction, founded on the presumption that the testator, in imposing the charge, intended to give a fee where the quantity of the estate is not defined. It applies only to indefinite devises. Where the estate is given for life in express terms, or an estate tail, or some other determinate estate is expressly given or arises by necessary implication from the language of the devise over, this rule is inoperative to enlarge such estate to a fee. The charge upon the devisee is a circumstance affording a rule of construction, but cannot enlarge the estate given, as ascertained by a construction upon the language of the whole will. *Doe* v. *Fyldes, Cowp.* 834; *Doe* v. *Owens,* 1 *B. & Ad.* 318; *Den* v. *Cook,* 2 *Halst.* 41; *Den* v. *Small, Spencer* 151; *Jackson* v. *Merrill,* 6 *Johns.* 185; *Jackson* v. *Staats,* 11 *Johns.* 337–348; 2 *Jarman on Wills* 173.

The implication of an absolute estate in fee in James, arising from the personal charge imposed, is overcome by the eighth clause of the will. The words " die without issue," in that clause, which, standing alone, import an indefinite failure of issue, and would create a fee tail, are qualified by the succeeding words, " such share or shares to be equally divided amongst the surviving heirs." The superadded words of survivorship make the limitation over depend on a definite event—the failure of issue at the death of James—and the estate of James became thereby a fee simple conditional, with a limitation over by way of an executory devise to " the surviving heirs." *Den* v. *Schenck,* 3 *Halst.* 29; *Den* v. *Snitcher,* 2 *Green* 53; *Den* v. *Allaire, Spencer* 6; *Seddel* v. *Wills, Spencer* 223; *Kennedy* v. *Kennedy,* 5 *Dutcher* 185; *Fairchild* v. *Crane,* 2 *Beas.* 105. These cases, though perhaps not in accord with the weight of authority in England, have settled the law in this state.

The estate thus created was determinate and defeasible on the happening of two events: first, the death of James, without issue at his death ; and second, the survivorship, at his death,

of some one or more individuals entitled, under the designation of "the surviving heirs," to take the estate under the executory devise, *per formam doni.* The period of time to which the survivorship related is the death of James. *Seddel* v. *Wells, supra; Holcomb* v. *Lake,* 4 *Zab.* 686; *S. C.,* 1 *Dutcher* 605.

In order to determine the estate of James, both the events mentioned must happen. On a devise of a fee simple conditional, with an executory devise over to another, the whole estate goes out of the devisor, in the first instance, to the complete disinherison of the heir. 2 *Washb. on Real Prop., p.* 344, § 8, *p.* 345, § 10; 2 *Powell on Devises* 241. And if there be no one to take under the executory devise, the estate will not revert to the right heirs of the testator. *Jackson* v. *Staats,* 11 *Johns.* 339.

In the event of there being no one surviving, at the death of James, competent to take under the designation of "the surviving heirs," his estate was a fee simple absolute, and passed to the devisee under his will. *Den* v. *Schenck, supra; Drummond* v. *Drummond,* 11 *C. E. Green* 234. On the other hand, if there was, at the death of James, some one surviving who might take under the designation of "the surviving heirs," his estate ended at his death without issue. The state of the case is somewhat obscure on this subject, and the second of the inquiries of the Circuit Court, therefore, is not answered categorically.