THE BANK OF THE UNITED STATES *vs.* HOUSMAN and others.

Where the grantor, after the execution of a voluntary conveyance to his sons, is permitted to retain possession of the premises as the ostensible owner and the conveyance is not recorded, such continued possession is prima facie evidence of fraud as against subsequent creditors who have given credit to the grantor upon the faith of his supposed ownership of the property.

A voluntary conveyance is not per se fraudulent, even as against creditors to whom the grantor was indebted at the date thereof. And where there is no evidence of fraud in fact in the giving of the deed, nor any subsequent acts of the parties from which fraud can be legally inferred, subsequent creditors of the grantor cannot avoid the deed by showing that the consideration expressed therein was not the true consideration.

In order to make a valid conveyance of land under the statute of uses, it is sufficient if any good consideration appears upon the face of the deed which will legally raise the use in favor of the grantee. And if the real consideration of the conveyance was neither corrupt nor illegal, the grantor and those

1837.

Bank of the
United States
v.
Housman.

claiming under him are estopped from denying the payment of the consideration, so far as a consideration is necessary to give effect to the deed.

A man free from debt may execute a valid deed of gift, not founded in fact upon either a pecuniary consideration or a consideration of blood or marriage, by inserting a nominal pecuniary consideration therein ; the actual payment of which nominal consideration the grantor, and those claiming under him, will not be permitted to disprove.

Where the intent of the grantor to pass lands by a written conveyance is apparent, if for any reason the deed or instrument cannot operate in the way contemplated by the parties thereto, the court will if possible give it effect in some other way. A conveyance of a future estate by lease and release, which cannot operate as a bargain and sale for want of a pecuniary consideration, may operate as a valid covenant to stand seized to the use of the grantee where it appears that there was a relationship of blood existing between the grantor and grantee, which formed the real consideration of the conveyance.

THIS was an appeal from a decree of the vice chancellor July 4. of the first circuit. The bill was filed by the complainants as judgment creditors of Jacob Housman to set aside three conveyances made by him to his sons ; and to compel the latter to apply the monies which they had received upon a subsequent conveyance of a part of the premises in satisfaction of the complainants' judgments, execution upon such judgments having been returned unsatisfied. The bill charged that in November, 1824, Jacob Housman became indebted to the complainants as the drawer of a note for $3000, endorsed by the mercantile firm of J. & J. Latourette, which was discounted by the complainants for the benefit of the latter ; that the note was renewed from time to time and partial payments made thereon, until October, 1825, when the amount due was $2000 ; and a renewed note was given for that sum payable in 60 days ; that in November, 1825, another note drawn by J. Housman and endorsed by the same persons was discounted by the complainants for the latter for the sum of $2300, and payable also in 60 days. These notes not being paid when they became due, suits were commenced thereon in the supreme court of this state against J. Housman, upon which judgments were obtained in favor of the complainants in May term, 1826, for the amount of the respective notes with interest and costs ; and that writs of fieri facias were there-

upon issued to the sheriffs of the county of Richmond and of the city and county of New-York which were afterwards returned wholly unsatisfied. The complainants further alleged that notwithstanding the return of the executions unsatisfied, J. Housman had some interest in a large real or personal estate or both which he had placed in the hands of his sons W. C. Housman and J. A. Housman, the other defendants, to keep the same beyond the reach of his creditors, although he continued to enjoy the property and to exercise acts of ownership over it; that after he became indebted to the complainants he conveyed to his sons a lot and premises at the corner of Whitehall and Front streets, and two stores and a lot of ground No. 53, Whitehall street, in the city of New-York, and 132 acres of land and the buildings thereon, in the county of Richmond, by deeds bearing date the 10th of August, 1822, with intent to hinder, delay and defraud his creditors; that the deed for the first mentioned premises purported to be for the consideration of $2000, although the same were in fact worth seven or eight thousand; that the consideration mentioned in the deed for the two stores and lot in Whitehall street was $4000, when in fact the same were worth ten or twelve thousand, and that the consideration in the deed for the lands upon Staten Island was stated to be $5000, although the premises were worth $7000. The complainants also charged in their bill that the deeds of J. Housman to his sons were not in fact executed before he became so indebted to the complainants, nor until after he was or pretended to be insolvent; that no consideration, or a very inadequate one, was paid for the property; that the deeds were not acknowledged or recorded until November, 1825, and were not delivered to the pretended grantees until about that period; that the pretended grantor, after the date of the deeds and after he became indebted to the complainants, continued to occupy, use and enjoy the premises, and to receive the rents and profits and to exercise other acts of ownership over the same, and to hold himself out as the owner thereof; and that subsequent to the recovery of the judgments the two sons sold and con-

veyèd the Staten Island farm, and received about $6000 as the purchase money for the same.

1837.

Bank of the United States v. Housman.

By the answers of the defendants, the indebtedness to the complainants, the recovery of the judgments and the return of the executions thereon unsatisfied were not denied. It appeared from the answer of J. Housman that the notes were executed by him for the benefit of the endorsers as mere accommodation notes and were discounted solely for their use; and he denied that he had, or was interested in any real or personal estate, except his wearing apparel, at the time of filing the complainants' bill or at the time of putting in his answer. The defendants in their answers admitted that there was no other consideration for the deeds than that of natural love and affection. But they denied that the deeds were executed after the debts to the complainants were contracted, or with any intent to defraud creditors. On the contrary they alleged that the deeds were executed at the time they bore date, in pursuance of the dying request of the mother of the grantees who died a few days previous; and that at the time of executing the conveyances, J. Housman was worth at least $10,000 in personal estate and was not indebted; that the deeds were actually acknowledged before a commissioner of deeds on Staten Island in October, 1822, and were kept and retained by the sons or one of them from that time; and that the only reason they were not then recorded was because the grantees were not aware of the fact that it was necessary in order to protect their interests. The defendants admitted that J. Housman, after the date of the deed and until the spring of 1826, was allowed to continue in the occupation of the house and lot at the corner of Whitehall and Front streets, without paying rent therefor, the sons occasionally occupying the house with him, but residing principally on Staten Island. But they denied that he continued to occupy or use any other part of the property conveyed, or to receive the rents and profits thereof except occasionally as the authorized agent of his sons. The cause was heard upon pleadings and proofs before the vice chancellor, who did not express any opinion upon the question whether the giving of

the deeds was bona fide with an honest intention of settling the property of J. Housman upon his sons or whether the deeds were executed with the intent to defeat those who might thereafter become his creditors. But the vice chancellor decided and decreed that the deeds were void because the money consideration therein expressed was not paid, so that they could not be supported as conveyances by bargain and sale; and that they could not operate as covenants to stand seized to the use of the sons on account of the real consideration of love and affection, because no such consideration appeared from the deeds themselves.

The following opinion was delivered by the vice chancellor at the time of making his decree:

W. T. McCoun, V. C. This case can be disposed of more satisfactorily to my own mind, upon the points of law which have been raised with respect to the force and operation of the deeds as between the father and sons, the defendants in this suit, than upon the question of fact presented by the pleadings and proofs as to the bona fides of the transaction. That question is whether the motive on the part of the father Jacob Housman was fair and honest in settling the property upon his sons, or whether his intention was to convey his property away and afterwards to contract debts or incur liabilities upon the strength of his ostensible ownership which he did not mean to pay. The circumstances do not place the transaction entirely above the reach of a suspicion of this sort; yet the deeds may have proceeded from a desire to settle the property upon his sons, without any bad faith on his part towards those who might become his creditors. And perhaps the evidence would hardly warrant the conclusion that the deeds were designedly and intentionally fraudulent, and therefore void as to subsequent creditors, such as the complainants in this bill. I deem it unnecessary, however, to express any decisive opinion on this point. The deeds are confessedly voluntary, not founded on any valuable consideration. A pecuniary consideration is expressed in each of the deeds; yet it is admitted by the defendants in their answer that no

money was paid, or was ever intended to be paid by the sons for the purchase. On the contrary, it is asserted that the whole was intended as a gift of the property by the father, founded upon no consideration but that of blood or natural affection.

The objection is therefore taken, that as there was no pecuniary or valuable consideration, in fact, either paid or intended to be paid, the deeds cannot take effect as deeds of bargain and sale. And inasmuch as none other than a money consideration is expressed or alluded to in the instruments themselves, no other consideration, not even that of blood, can be averred or admitted to be proved in order to support or give effect to them as covenants to stand seized to uses which the statute of uses would execute. These objections appear to be well taken, and, in my judgment, are fatal to the deeds both in law and equity. No rule of law is better established than that a consideration in money paid, or to be paid, or of something valuable, is necessary to a deed of bargain and sale, such as the deeds in question purport to be. (3 *Preston on Abs.* 13, 23. *Jackson* v. *Delancey,* 4 *Cowen,* 427.) Here such considerations are expressed, but it is admitted the instruments in this respect speak untruly. There was no bargain and sale of the property, as no such contract was made. A conveyance for a valuable consideration in law was not intended. The parties now say that instead of a sale, a gift of the property was intended ; and the sons claim under the instruments as deeds of gift. How then can the deeds be permitted to take effect as deeds of bargain and sale ? They cannot, unless the court can make a contract for the parties which they have not yet made between themselves, and do for them an act *in pais* which they have not done. Can the instruments then have any effect or operation as deeds of gift, or, in other words, as covenants to stand seized to uses ? A good consideration, such as blood or marriage, is essential to this mode of conveyance, and such a consideration may be averred and proved where it exists, though it be not expressed in the deed, provided such averment and proof be not repugnant to what is expressed therein. Whenever a deed expresses

one sort of consideration and nothing more, not saying for other good causes or considerations, and alluding or referring to no other than the one expressed, parol evidence of another consideration is inadmissible; because it is contradictory of and inconsistent with the deed. (7 *John. Rep.* 342. 4 *Cowen*, 431.) The case has sometimes been put, to exemplify the law on this point, that where a deed is made from father to son founded upon natural affection, but a money consideration happens to be mentioned in the deed, and it is not said for divers other considerations, the parties are confined to the consideration expressed, and shall not be permitted to prove it was founded upon any other, and if the deed cannot take effect as a bargain and sale, it shall not as a covenant to stand seized. (*Bedell's case*, 7 *Coke*, 40; *and see* 3 *Mad. Rep.* 363, 364.) The reasons are obvious. An appropriate consideration is indispensably necessary; where it is pecuniary and is so expressed in the deed, and that is falsified, the deed must fail for the want of a consideration; and where evidence is inadmissible of a different consideration, by reason of its repugnancy to what is expressed, the deed equally fails for want of support. Title to lands cannot pass by parol; and however honestly the defendants in the present case may have intended a conveyance of the property from the father to the sons upon the consideration of natural love and affection, still, if the father has not in fact executed a deed of that description, the title remains in him. I am therefore of opinion, that inasmuch as the defendants are precluded from shewing the *good* consideration which they allege for the deeds, and as from their own admissions the *valuable* considerations expressed in them are falsified, the deeds are effectual for no purpose whatever. The complainants, as judgment creditors of the father, are entitled to the aid of this court in removing the obstacles which these deeds have presented to the recovery of their debt out of the property upon which their judgments would otherwise operate as liens; and also to their costs of this suit.

From the decree of the vice chancellor the defendants appealed to the chancellor.

*S. P. Staples*, for the appellants.

*J. Duer & J. L. Lawrence*, for the respondents.

1837.

Bank of the
United States
v.
Housman.

THE CHANCELLOR. The first question which I shall consider in this cause is whether there is any thing in the case which can authorize a conclusion that the deeds were not intended as a bona fide settlement of the property upon the sons of the grantor, but were intended to defraud creditors. The complainants have wholly failed in establishing the allegation in their bill that these deeds were, in fact, executed after the giving of the notes upon which their judgments were recovered. The answers of the defendants, which are directly responsive to the bill in this respect, show that the deeds were given at or about the time of their date, two years previous to the discounting of the first note in November, 1824. The testimony of the subscribing witness and of the lawyer who drew the deeds and took the acknowledgment thereof as a commissioner also establish the fact beyond all possibility of doubt. The reason given in the answer why the deeds were not put on record at that time is also perfectly satisfactory. It must be borne in mind that the county of Richmond, where the grantees live, was not made a recording county until July, 1823 ; and it is therefore not at all improbable that they were not apprised of the fact that it was necessary to have the deeds of the lots in New-York recorded in order to protect their title against the claims of subsequent purchasers and mortgagees. The giving of the mortgage to Hone and Anthon is explained in the answer, and the allegations of the defendants in relation thereto are fully proved by the testimony of one of the witnesses. Some suspicion is thrown upon the transaction from the fact that the father was permitted to mortgage this lot in his own name without disclosing the fact to the mortgagees that he had conveyed the property to his sons. But as the sons assented to this mode of doing the business, and bona fide mortgagees without notice would be protected against the unrecorded deed, it rebuts the presumption that the father was permitted to exercise

1837.

Bank of the
United States
v.
Housman.

this kind of control over the property to defraud creditors. A more suspicious circumstance is the renting of the store in the spring of 1825, for the term of five years, by J. Housman in his own name, describing it as his store and receiving the rent of the same for two quarters, without disclosing the fact that he had conveyed the lot to his sons between two and three years before. The answers of the defendants, however, in response to the bill, contain positive allegations that the father was authorized to rent it as the agent of the sons, and that the rent was actually paid over to them. The answers also show that the rent was not received by the father between the time of making the deed and the spring of 1825, but was received by the sons or one of them ; and there is no evidence to contradict the answers in this respect. The farm at Staten Island has also been occupied by the sons, or one of them, since August, 1822, until it was sold by them. There is, therefore, no presumption of fraud which can arise in relation to the farm on Staten Island, or the lot and stores at No. 53 Whitehall-street, from a continued possession of the grantor after the giving of the deed. And since the decision of the court for the correction of errors in the case of *Seward* v. *Jackson, ex dem. Van Wyck*, (8 *Cowen*, 496,) the question must be considered as settled in this state that a voluntary conveyance is not *per se* fraudulent, even as against creditors to whom the grantor is indebted at the date of the deed. But before that decision it was well settled that a voluntary conveyance from a person not indebted at the time, accompanied with an immediate transfer of the possession of the property to the grantee, was valid as against subsequent creditors. (*Cosby* v. *Ross's adm'rs*, 3 *J. J. Rep.* 290. *Sexton* v. *Wheaton and wife*, 8 *Wheat. Rep.* 229.) As to the premises contained in two of the deeds there is nothing from which it can be legally inferred that the conveyances were made to defraud creditors. I shall therefore proceed to consider whether these two deeds can be avoided upon the ground upon which the vice chancellor has based his decree in this case. The house and lot at the corner of Whitehall and Front

streets conveyed by the third deed depend upon a different principle, which I shall hereafter consider.

The consideration expressed in these deeds, which were intended to convey the title to the grantees under the statute of uses, is stated to be the payment of money to the grantor : when, in point of fact, the real consideration was a desire on the part of the father to settle the property on his children. If this last consideration had been stated in the deeds, there could be no possible doubt that they would have operated as covenants to stand seized, so as to have transferred a valid title to the grantees. But the vice chancellor has put his decision upon the ground that where a deed is stated to be upon a pecuniary consideration to make it valid as a bargain and sale, the deed is inoperative as a bargain and sale if no pecuniary consideration was in fact paid ; and that the grantee in such a case cannot be permitted to show a consideration of love and affection, so as to give effect to the conveyance as a covenant to stand siezed to his use. In this I think the vice chancellor is clearly wrong. If there is no evidence of fraud in fact in giving the deed, or any subsequent acts of the parties from which fraud can be legally inferred, subsequent creditors cannot be permitted to inquire into the fact whether the consideration expressed is the true consideration. In other words, they are in no better situation than the grantor himself, through whom they claim, who is estopped from denying that the consideration stated in the deed was actually received and paid ; unless the deed is founded upon a consideration which is corrupt or illegal, or the deed has been fraudulently or unfairly obtained. The extent and sufficiency of the consideration in reference to the value of the land is only material where the grantor was indebted at the time of the conveyance and creditors are seeking to set aside the deed on the ground of fraud, or where the conveyance is alleged to be voluntary and therefore fraudulent as against subsequent purchasers. But for the mere purpose of conveying the land by an instrument which is to operate under the statute of uses, it is sufficient if any consideration appears upon the face of the conveyance suffi-

cient to raise the use ; and neither the grantor nor his heirs are permitted to aver or prove that the consideration stated therein did not in fact exist. The learned author of the Touchstone says : " In a conveyance by bargain and sale there must be some good consideration given, or at least said to be given for the land ; and if the deed make mention of money paid, as in consideration of £100, or the like, and in truth no money is paid, yet the bargain and sale is good. And no averment will lie against this which is expressly affirmed by the deed." (Shep. Touch. 222. Fisher v. Smith, Moore's Rep. 569. Chiles v. Coleman, 2 A. K. Marsh. Rep. 299.) I believe it cannot be doubted that a man who is perfectly free from debt can make a deed of gift to an illegitimate child, or even to a stranger, which will be valid as against the claims of subsequent creditors. But even in such a conveyance, to render it valid under the statute of uses, a pecuniary consideration must be inserted although none is in fact paid ; a consideration of blood or marriage being essential to render the deed effectual as a covenant to stand seized. And yet, upon the principle contended for by the counsel and adopted by the vice chancellor in this case, such a conveyance would be void, upon proof that the pecuniary consideration mentioned therein, as a matter of form merely and to save the expense of a common law conveyance, was not in fact paid.

Again ; I am inclined to think that if necessary these conveyances might be permitted to operate as covenants to stand seized to the use of the grantees, even if the statute of enrolments existed here, or there was any other cause why they could not be permitted to operate by way of bargain and sale. Where the intent of the grantor to pass the land is apparent, if for any reason the deed or instrument by which the transfer of title was intended to be effected cannot operate in the way contemplated by the parties, the court, if possible, will give it effect in some other way. And judges have been very astute in such cases in their endeavors to make the conveyance operative one way or the other to carry into effect the intention of the grantor or donor. Thus in the case of Roe v. Trammer,

(*Willes Rep.* 682, 2 *Kenyon's Rep.* 230, *S. C.*,) where the ultimate limitation of the fee to a collateral relative of the grantee could not operate by way of lease and release, which was the form of the conveyance adopted, because it was the grant of a freehold in futuro, and was not effectual as a bargain and sale because there was no consideration paid by the grantee of the reversion, the court gave effect to the conveyance as a covenant to stand seized, on the ground that the grantee was described in the deed as the eldest son of the uncle of the grantor, and of course a blood relative. So in the case of *Jackson* v. *Swart*, (20 *John. Rep.* 85,) the late Chief Justice Spencer held that a deed from a man to his sons, which purported to be founded upon a pecuniary consideration only, might operate as a covenant to stand seized ; and that a reservation of a life estate to his wife, without any other consideration except that she was described in the deed as his wife, was valid as a covenant to stand seized of the life estate for her use. In the present case the grantees are described in the deeds as the sons of the grantor. And if the deeds cannot operate by way of bargain and sale, they can, upon the doctrine of these decisions, be made effectual as covenants to stand seized of the premises to the use of the grantees ; especially when it is proved that this relationship formed the real consideration of the conveyances, and that the pecuniary considerations expressed therein were merely formal.

So much of the decree of the vice chancellor as declares and adjudges the deeds of the two stores and lot of ground No. 53 Whitehall-street and of the farm on Staten Island to be void, and charges the defendants W. C. & J. A. Housman with any part of the monies raised by the sale or mortgage of these premises, is therefore erroneous and must be reversed.

The house and lot at the corner of Whitehall and Front-streets were conveyed by a separate and distinct deed ; which deed, upon the facts disclosed in this case, must be considered as fraudulent and void as against those who became creditors of J. Housman while he was permitted to retain possession of the premises conveyed as the ostensible

1837.

Bank of the United States v. Housman.

owner thereof. In this case, whatever may have been the intention of the parties to this deed, the complainants have actually been deceived and defrauded by the grantee's neglect to put the deed on record and suffering the grantor to occupy and use the premises as his own, and as if no such conveyance had in fact been made. For it appears from the testimony of the cashier that the credit to J. Housman was given upon the faith of his being the owner of a large real estate. Although the continued possession of the vendor upon an absolute sale or conveyance of property is not conclusive evidence of fraud as against the claims of creditors, where such continued possession is satisfatorily explained consistently with the deed, it is presumptive evidence of fraud; which presumption is not rebutted by merely showing that the consideration expressed in the deed is not the true one, and that the grantor was permitted to remain in possession because he had given the property to the grantee. This is one of those cases in which the grantee is not permitted to rebut the prima facie evidence of fraud, arising from the apparent nature of the transaction, by averments or evidence contradicting the deed under which he claims. Here the possession of the father continued, notwithstanding the deed of gift to his sons of an estate *in presenti*; leaving those with whom he was doing business and contracting debts to suppose he was still the real owner. And no change of possession took place until his own personal losses and the failure of those to whom he had lent his name and credit had rendered him hopelessly insolvent. The only attempt to account for this possession of the property, wholly inconsistent with the terms of the deed, is the supposition of counsel that the sons were unwilling to deprive a father who had given them the property of the use and occupation thereof so long as he wished to retain it himself. The short answer to that is, that if he wished to retain the use of the house and lot while he continued to reside and do business in New-York, the terms of the deed would probably have reserved the right; unless his object was to retain the use of the property himself and at the same time to place it beyond the reach of creditors in the

event of his insolvency by any misfortunes in business. 1837.
And if such was his intention, the conveyance was clearly Cushman
fraudulent as against such creditors who have since dealt v.
with him upon the faith of his ostensible ownership of the Brown.
property.

The complainants were therefore entitled to a decree
declaring the deed of that house and lot fraudulent and
void as against them ; and directing the payment of the
amount of their judgment with interest and the costs of the
suit out of the proceeds of a sale of the premises, to be
made under the direction of a master. And if those pro-
ceeds prove insufficient for that purpose, the rents and pro-
fits which have been received by W. C. & J. A. Hous-
man since the return day of the complainants' first execu-
tions against the property in New-York should be applied in
satisfaction of the judgments and costs.

The decree of the vice chancellor must be modified ac-
cordingly. And as neither party has succeeded wholly
upon this appeal, I shall not give costs on the appeal to
either party as against the other. If an inquiry as to the
rents and profits shall become necessary, the master who
makes the sale must proceed and take an account thereof
immediately after the sale so as to include the rents and
profits up to the time when the purchaser is to be let into
the possession of the premises.