HAYES and THORBURN, Executors &c., v. KERSHOW.

Executed covenants and agreements, founded upon a good or meritorious conside-
ration, are upheld and enforced specifically in a court of equity.

Collateral consanguinity is not a meritorious consideration.

T. and J. S. on the 11th December, 1807, executed to A. and D. two instruments.
By one, the title to certain premises was vested in fee in A. and D., to hold to the
use of A. during her life, and after her death to the use of her two children during
their lives, and that of the survivor of them, with remainder to the grantors, their
heirs and assigns. The second recited the first in full, and the desire of T. and
J. S. to convey the premises to the lawful issue of the two children of A. abso-
lutely; and then in consideration of love and affection for A. and her offspring
and of one dollar, they covenanted for themselves, their wives and heirs, with A.
and D., absolutely to convey by good and sufficient conveyances and assurances,
the same premises to the lawful issue of the two children of A.

Held, that the two are to be construed together, as one instrument, and as a con-
veyance in præsenti.

Held, also, that the deeds are a good covenant to stand seised to uses, as to the issue
of the children of A.

The contingent interest in the grand-children of A. is good as a contingent remain-
der, and may also be supported in equity as a trust.

The limitation to them, is not too remote, as the estate would vest at the termina-
tion of the lives of A.'s two children.

    November 9, 1843 ; January 31, 1844.

The bill in this cause was filed by A. B. Hayes and G. C.
Thorburn, executors of Stephen Mayers, to compel the defend-
ant, Kershow, to complete a contract for the purchase of certain
real estate, made by him at an executor's sale, in February,
1842. Kershow interposed no objection to completing his pur-
chase, except that the title to the land was imperfect. It ap-
peared that Mayers, the testator, was a bona fide purchaser of
the premises for a valuable consideration, from Mrs. Henrietta
Anderson. Mrs. A. derived her title as follows: On the 11th
day of December, 1807, Thomas and James Swords who then
owned the land, made and executed two instruments to Mrs.
Anderson, (who was their sister) and James Davidson, convey-
ing to them the lot in controversy. By one of these instru-

ments, *the deed*, the whole title in fee to the lot, was vested in the first instance in D. and Mrs. A. to have and to hold to the use of Mrs. A. during her life, and after her death to the use of her two children, Allen Jackson and Mary Anderson, during their lives and the life of the survivor of them, and from and after the decease of the three *cestuis que use*, the grantees and their heirs and assigns were to yield and deliver up the premises and all their interest therein, to the grantors, their heirs and assigns. The consideration of this deed was *natural love and affection for the sister and her two children*, with the nominal sum of one dollar. The second instrument recited the first in full, and also recited that the Messrs. Swords and their wives were desirous, in case Allen Jackson and Mary A. should have lawful issue, to convey the premises to such issue by an absolute sale and conveyance ; and *then in consideration of their love and affection for Mrs. A. and her offspring*, and of one dollar expressed to have been paid by D. and Mrs. A., the Messrs. Swords covenanted for themselves, their wives, and their heirs with Mrs. A. and Davidson, their heirs, executors, administrators and assigns, that they, the said T. & J. Swords, and their wives, and their heirs, should and would absolutely convey by good and sufficient conveyances and assurances, the same premises to the lawful issue of Allen Jackson and Mary Anderson.

The two deeds were executed simultaneously ; and on the 18th of November, 1814, soon after the passage of the recording acts for the city and county of New-York, they were recorded together as deeds.

By a deed dated September 16, 1817, wherein Davidson and Mrs. A. were parties of the first part, Allen Jackson of the second part, and T. & J. Swords of the third part, reciting the two foregoing deeds or instruments, and that the Messrs. Swords and their wives, by and with the consent of the parties interested who were capable of giving a legal and sufficient consent, were minded to convey the premises to Mrs. Anderson ; Davidson and Mrs. A., for a nominal consideration, discharged, acquitted, and freed the Messrs. Swords and their heirs, executors, administrators and assigns of and from the

aforesaid covenants; and Davidson, Mrs. A., and Allen Jackson, for a like consideration, conveyed the premises to T. & J. Swords in fee. This deed recited the infancy of Mary Anderson, and Mrs. A. and Allen J. covenanted with T. & J. Swords to procure a release from her within six months after she became of full age.

By a deed dated October 29, 1817, T. & J. Swords conveyed the premises to Mrs. Anderson in fee. The consideration expressed was $3300. And Mary Anderson, when of full age, released her interest to Mrs. A., on the 7th day of June, 1824.

Mrs. A. conveyed the premises to Stephen Mayers in fee, on the 26th of April, 1826.

Mary Anderson married Thomas B. Cuming, and had issue several children, who, with their mother, were living at the time of filing the bill in this cause. Allen Jackson died before 1842, without issue.

*C. F. Grim,* for the complainants.

*H. B. Cowles,* for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The defendant interposes no objection to completing his contract of purchase, provided he can receive a perfect title.

This depends upon the effect of the instruments executed by Thomas and James Swords to Mrs. Anderson and James Davidson, on the 11th day of December, 1807. If the covenant of the Messrs. Swords' was binding and irrevocable by them, the subsequent release of the trustees was unavailing to discharge it. And if by the true construction of those instruments, they are to be deemed as constituting but one deed, and that a conveyance in *præsenti;* the subsequent purchasers from Mrs. Anderson are charged with notice of the rights of her grandchildren, and their title is subject to those rights.

*First.* As to the force of the instrument as a mere covenant for a future conveyance; the counsel did not press its validity, and it cannot be maintained. It was a voluntary covenant,

without valuable consideration, in favor of the children which might be born of the then infant nephew and niece of the covenantors.

In the exercise of the discretion which courts of equity still have in decreeing the specific performance of agreements, they uniformly decline to enforce voluntary covenants.

Lord Eldon, in *Ellison* v. *Ellison*, (6 Ves. 662,) thus expresses the difference between such a contract when executed and when executory. " I take the distinction to be, that if you want the assistance of the court to constitute you cestui que trust, and the instrument is voluntary, you shall not have that assistance for the purpose of constituting you cestui que trust ; as upon a covenant to transfer stock, &c.; if it rests in covenant, and is purely voluntary, this court will not execute that voluntary covenant ; but if the party has completely transferred stocks, &c., though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced by this court."

He repeated and enforced the distinction in *Pulvertoft* v. *Pulvertoft*, (18 Ves. 99 ;) and it has been acted upon frequently since, in the English Court of Chancery.(*a*)

Chancellor Kent approved of this rule in *Bunn* v. *Winthrop*, (1 J. C. R. 329,) and in *Minturn* v. *Seymour*, (4 id. 497,) and Chancellor Walworth adopted it in *Acker* v. *Phœnix*, (4 Paige's R. 305.)   And see 1 *Story's Eq.* 414, § 433.  2 id. 250, § 987.

Covenants and agreements founded upon a good consideration, or as oftentimes expressed, on a *meritorious* consideration, are however upheld and enforced specifically in this court. And it has been a mooted question whether collateral consanguinity, as that of a brother, nephew, niece, &c., was not a meritorious consideration.   I think it is now settled upon authority that it is not.

In *Edwards* v. *Jones*, (1 M. & C. 226,) the voluntary donee was a niece of the party attempting to make the transfer.  Lord

---

(*a*)  See *Watson* v. *Parker*, (6 Beavan, 283,) and *Clough* v. *Lambert*, (10 Simons 174.)

Chancellor Cottenham, affirming the decree of the Vice Chancellor, held that the niece was a volunteer, and that the court would not aid her to carry the gift into effect. In *Meek* v. *Kettlewell*, (1 Hare's R. 464. S. C. 6 Lond. Jur. R. 550,) Vice Chancellor Wigram held the same of an attempted transfer to the husband of the daughter of the party making it; and his decision was affirmed by the Chancellor, (Lord Lyndhurst,) on the 6th December, 1843, 7 Lond. Jur. Rep. 1120.(*a*) Both of these learned judges approve of the decision in *Edwards* v. *Jones*.(*b*)

The case of *Buford's Heirs* v. *M'Kee*, (1 Dana, 107,) in the court of appeals in Kentucky, is directly in point. The defendants took the land by devise, from one who in his lifetime had executed a covenant to Buford, (who was his nephew,) to convey the same land to B. at the covenantor's death. On a bill by B.'s heirs for the specific performance of the agreement, it was refused by the court, on the ground that the covenant was voluntary, and that the relationship between the parties did not constitute a meritorious consideration.

In the case before me, there was no moral obligation to provide for a wife or children, or a parent; and there was therefore no such good or meritorious consideration, as will induce this court to decree the performance of the covenant in the sealed instrument in question.

*Second.* It is argued on the part of the defendant, that the two deeds executed by the Messrs. Swords on the 11th of December, 1807, are in effect but one instrument, and are to be construed together. And that when thus construed, they vested the whole title in Davidson and Mrs. Anderson, in trust for Mrs. A. during her life, with remainder to her two children named, for their lives and the life of the survivor of them, with a contingent remainder to their children in fee, failing which the estate was to revert to the grantors.

---

(*a*) Since reported in 1 Phillips, 342.

(*b*) See *Ellis* v. *Nimmo*, (Lloyd & Gould's R. Temp. Sugden, 344.)

(After stating the contents of these instruments, the court proceeded ;)

I entertain no doubt but that the instruments are to be construed together, and in the same manner as if their provisions were contained in one deed. Their effect when thus construed has occasioned me some perplexity.

The intention of the grantors is perfectly plain. They designed, out of love and affection for their sister and her offspring, to bestow upon her and them the property in question. In case her two children should leave no issue, the estate was to revert to the grantors. In no other event, and for no other purpose, except to prevent its being transmitted to strangers to their blood, did the grantors intend to reserve any interest to themselves.

I cannot imagine that the covenant in the second deed was designed to hold out to the children of their nephew and niece a mere empty and delusive hope that they were to be the ultimate owners of the estate. Yet such was its obvious effect, if it has no force except as an executory covenant. As such, it left the intention of the grantors, as exhibited by the two deeds, to be defeated at will by their own heirs or devisees ; and thus the reasonable expectations of their sister's grand-children, on which they might have formed matrimonial connections, and made their whole plans for life, would be subjected to the volition of strangers in blood and in affection, and a volition to be exercised, too, under the sway of an interest adverse to that of the grand-children.

No one can read the two deeds without being convinced that the Messrs. Swords intended to do all in their power, by those instruments, to vest the estate in Mrs. Anderson and her lineal descendants.

Lord Coke, in treating of the statute of uses, says the intention of the parties is the principal foundation of the creation of uses, for *verba intentioni, et non e contra, debent inservire.* (2 Inst. 672 ; Bedell's Case, 7 Reports, 40.) And Lord Chief Justice Hobart says, " I do exceedingly commend judges that are curious, and almost subtle, *astuti,* to invent reasons and

means to make acts operate according to the just intent of the parties, and to avoid wrong and injury which might be occasioned by rigid rules, and adhering too strictly to the words themselves." (Hobart R. 277.)

Willes, Lord Chief Justice, in *Doe* v. *Salkeld*, (Willes R. 674, 5,) says that this advice of Lord Hobart has been taken notice of by the judges, and referred to in many of the cases of covenants to stand seised, as an excellent rule to go by ; and he thinks we cannot observe any better.

And see his observations in *Roe* v. *Tranmarr*, (3 Wils. 78.)

Without adverting to the cases innumerable in which this general principle is recognized and applied, I will only refer to *Jackson ex dem. Trowbridge* v. *Dunsbaugh*, (1 Johns. Cas. 95,) where the Supreme Court of this state affirmed it emphatically ; in the case of a covenant to stand seised.

The result of the authorities is, that if the courts can collect from the deeds, that it is the intent of the parties to pass the estate, the mode or form of the expression or of the conveyance is not regarded, provided the intent can be effectuated by legal means.

Here the clear *intent of the grantors was to transmit this* property to their sister and her lineal heirs. If they had designed to retain a control over the disposition of the estate, to or among their sister's grand-children, the second deed would not have been executed. Its execution, if that were its legitimate effect, would have been a cruel and heartless mockery.

Have they, then, executed deeds containing sufficient and proper language to enable the courts to carry out their intention?

This can only be effected by construing the two deeds together, as a covenant to stand seised to uses. On the construction claimed by the complainants, the operation of the deeds was to vest the property in Mrs. Anderson for her life ; with remainder to her two children during their joint lives ; with a contingent remainder to the survivor during his or her life ; and the remainder in fee to the grantors, by way of *resulting use*, and not by force of the concluding provision in the first deed. And this ultimate remainder was accompanied with

a personal voluntary covenant, to convey the land to the grand-children of Mrs. A., if any there were.   To enforce the deeds even to this extent, it will be perceived that it is necessary to consider the first deed as a covenant to stand seised.   The nominal consideration of one dollar, (like that of five shillings in England,) which the courts may know judicially, is not usually paid, is not such a valuable consideration as will support a bargain and sale.   Thus, we set out with these instruments as being distinctively a covenant to stand seised, so far as to sustain the consecutive estates of the tenants for life.

To this end, we have the consideration of blood and affection, two persons seised to the use of others, two, if not three, *cestui que uses in esse,* and a *use in esse,* both in possession and remainder.   It is not necessary to inquire whether Mrs. A. took her life estate by force of the statute of uses, in consequence of there being another person associated with her and seised to uses, or whether she came in by the common law without the statute.

After an anxious consideration of the case, my conclusion upon the strongly expressed intent of the parties, is that the deeds must be held to be a covenant to stand seised, as to the issue of Mrs. Anderson's children.

This construction would have the effect to postpone the resulting use to the grantors, until after the death of the survivor of the two children of Mrs. A., without issue of either ; and if the survivor died and either of them left issue, the resulting use to the grantors would never take effect for their benefit.   If it is to be deemed a conveyance to uses strictly, and not a trust for the unborn issue, then, on the execution of the conveyance, the naked fee, after the life estates created by the deed, resulted to the grantors, until the birth of issue of Mrs. A.'s children, or one of them, when it would vest in such issue ; and the remainder thus vested, would open from time to time, to let in after born issue of those two children.   1 Prest. on Estates, 156, 7.   A reference to some of the authorities will illustrate and strengthen my view of the point.

Chief Baron Comyn says, if a man covenants for him and his heirs, that upon such consideration the other shall have his

lands, &c., the covenantee will have the possession as well as the use and profits, by the statute 27 H. VIII. ch. 10 ; (of uses.) Com. Dig. Covenant, G. 1..

Here, there were *cestuis que use in esse,* and as the estate passed to the two feoffees to uses absolutely, the covenant was operative upon the reversion or resulting use, left in the Swords' by the letter of the first deed, to carry the contingent remainder to the grandchildren ; if not as a contingent use and legal estate in them, the fee remaining during the contingency in the feoffors to uses ; at least as a use in Davidson and Mrs. A., in trust for the grandchildren.

In *Roe* v. *Tranmarr,* (Willes' R. 682 ; S. C. 2 Wils. 75,) where A, by lease and release, granted, released, and confirmed certain premises, after his own death, to his brother B. in tail, remainder to his nephew C. in fee, and covenanted that the premises, after his death, should be held by B., &c., according to the true intent of the deed ; it was held that the deed could not operate as a release, because it attempted to convey a freehold *in futuro* but that it was good as a covenant to stand seised. Ch. J. Willes, in his logical opinion in that case, lays down these as the only rules required to make a good covenant to stand seised, viz :

1st. That there must be a deed.

2d. That there be words sufficient to make a covenant.

3d. That the grantor or covenantor must be actually seised at the time of the grant.

4th. That the intent of the grantor must be plain.

5th. That there be a proper consideration to raise the use.

In reference to the 2d, he says, that if there were no other word but "*grant,*" that would be sufficient to make a covenant.

In the case before me, this word occurs, and there is the express covenant to convey and assure, in addition. In short, we have here, every requisite of the five rules.

It was objected in *Roe* v. *Tranmarr,* that the claimant there was no party to the deed ; and the Chief Justice said, "it was not necessary he should be a party ; remainders are most commonly limited to persons who are not parties, and especially

in covenants to stand seised." (And see to the same effect, *Cornish on Uses*, 43, 44.)

The case shows also that if no sufficient estate passed to Mrs. A. and Davidson, out of which the contingent remainders to the grandchildren could arise, yet they should arise out of the estate reverting to the grantors, as I have before stated.

In *Doe* v. *Salkeld*, before cited, Ch. J. Willes examines some of the prior leading cases, and among them that of *Osman* v. *Sheafe*, (3 Lev. 370 ; S. C. Carth. 307,) where the deed was held to be a covenant to stand seised, as it could have no other operation ; and the court said " that the judges of late times have had more consideration to the substance, viz. the passing of the estate, than the shadow, to wit, the manner of passing it." And in 1 Lutw. 782, *Sleigh* v. *Metham*, the court say " there is no conveyance that admits of such a variety of words as that of a covenant to stand seised."

We have seen that if the covenant be construed as a voluntary future covenant, the use in these deeds results to the grantors. This is never permitted against the intent of the parties. (1 Cruise's Dig. 448, title, Use, ch. 4, § 38, &c., and the cases there cited.)

In *Woodroffe* v. *Daniell*, (7 Lond. Jurist. Rep. 959, in the Exchequer, decided Nov. 24, 1842,) Mrs. W. in 1735, being seised in fee tail special under a conveyance to her and her husband in 1710, but supposing and reciting that she was tenant for life with remainder to her son George, in consideration of natural love and affection, and of a pecuniary consideration expressed in the deed, *granted, surrendered and yielded up* the premises in question to George, to hold to him and his heirs and assigns. Her deed was construed to take effect as a covenant to stand seised to uses. The character of the conveyance having become important by the subsequent events.

In *Jackson* v. *Dunsbaugh, ubi supra*, a deed from father to son, in consideration of ten shillings, was held to be a covenant to stand seised, so as to carry out the intent, and the Chief Justice considered collectively three distinct deeds executed on the same day, in order to ascertain and effectuate the intention.

In *Jackson ex. dem. Staats* v. *Staats*, (11 Johns. 337,) the

same was adjudged of a deed to take effect after the death of the grantor.

In *Jackson ex. dem. Wood* v. *Swart*, (20 Johns. 85,) it was held that a bargain and sale for a pecuniary consideration of a fee to commence *in futuro*, will operate as a covenant to stand seised to the use of the persons within the consideration, according to the intention of the party, without any technical or formal words for that purpose. There the deed of husband and wife, of his land, reserved a life interest to the wife, which as a reservation or exception was void ; but which was made good by construing the deed as a covenant to stand seised.

In *Wallis* v. *Wallis*, (4 Mass. 134,) the deed from the defendant to the plaintiff was in the form of a bargain and sale, habendum after the death of the grantor. There were covenants of seisin and warranty. The plaintiff was the son of the defendant. The court held it to be a covenant to stand seised to uses, in order to carry into effect the clear intent of the parties.(a)

Upon these authorities, I feel bound in this case to give effect to the intention of the parties if it can be done legally. *Benigné faciendæ sunt interpretationes chartarum, ut res magis valeat quam pereat; et quælibet concessio fortissime contra donatorem interpretanda est.*

' Here the principal object of the grant and covenant must fail, unless this construction be adopted. By adopting it, I do no violence to the words used. I make the covenant to operate as an executed, instead of an executory agreement. I do what equity is called upon to hold every day, by considering as done, that which is agreed to be done, in order the better to carry out the object of the contract. This construction accomplishes what the parties to these deeds thereby declared, in the most solemn terms, it was their aim to effect by the execution of the instruments.

I confess that I have come to this conclusion with diffidence and hesitation, but I can arrive at no satisfactory result, except to hold these deeds as one instrument, and operating as a covenant to stand seised to uses.

(a) And see *Bank of the United States* v. *Houseman*, (6 Paige, 526.)

NEW-YORK—JANUARY, 1844. 269

The contingent interest in the grandchildren of Mrs. A. under this conveyance, may be supported in equity as a trust. 4 Cruise's Digest, 194, title, Deed, ch. 12, § 31; and see *Machall* v. *Clarke*, (2 Ld. Raym. 778.) And that it is good as a contingent remainder, see 2 Cruise, 261, 263, title, Remainder, ch. 1, § 9, 16; and ch. 5, § 4, 5, (p. 346–7;) Chudleigh's case, 1 Reports, 120.

It is not a valid objection in this case that the limitation to the grandchildren is too remote. The estate would vest at the termination of the life of the two children named in the conveyance. See *Duke of Norfolk's case*, 3 Chan. Cas. 1. 2 Fearne Cont. Rem. 353, &c. 1 Prest. on Est. 156.

No question was raised upon the ground that Mayers, the testator, was a bona fide purchaser for valuable consideration, and therefore could hold the premises as against the voluntary deed. The difficulty is, that he derives his title through the voluntary conveyance, from Mrs. Anderson. Not only the record of the two instruments in question, but the deed to Mrs. A. in 1817, under which he claims, gave him full and ample notice of the rights of those in remainder.

The complainants are therefore unable to make a good title to the lot which the defendant bid off, and he is entitled to have his deposit returned to him, with the costs of this suit.

Decree accordingly.