The Chahcellob.
The bill is filed by judgment creditors of Andrew Montgomery, late of Paterson, deceased, for relief against a conveyance of certain real estate, made by the debtor in his lifetime to his son, Ebenezer Montgomery, the defendant.
The material facts of the case, as charged by the bill, and admitted by the answer, or clearly established in evidence, are, that in the year 1853, Andrew Montgomery, having • closed up the business in which he had previously been engaged, and disposed of his goods and chattels, was possessed of a small amount of personal estate, amounting to less than one thousand dollars, and was seized and possessed of unencumbered real estate, consisting of a lot on Mulberry street, in the city of Paterson, of the value of one thousand five hundred dollars, and of a lot on Parke street, of the value of four thousand dollars, the fair annual value of the two lots being about four hundred dollars.
On the twenty-second of August, 1853, the said Andrew, then having it in contemplation to engage in mercantile business in the state of Ohio, and having leased a store for that purpose, leased to his daughter, Jane Wright, a widow then living in the city of Paterson, for the purpose of securing her a home until her children should be grown up, the Mulberry street property, for the term of twenty-one years, at an annual rent of ten dollars. On the same day, (August 22d, 1853,) he conveyed to his son, the defendant, then being a minor of about the age of sixteen years, the Parke street property, for the consideration, as expressed in said deed, of five hundred dollars, but for which no consideration whatever was paid to the grantor. The deed was acknowledged on the twenty-third of August, 1853, but was not recorded until the twenty-fourth of October, 1854.
Soon after the execution of the said deed and lease, Andrew Montgomery removed from this state, and engaged in mercantile business at New Lebanon, in the state of Ohio, *109 liis son Ebenezer being with him, and acting as salesman. While so engaged in business, on the thirtieth of September, 1853, he purchased of the complainants a bill of goods, amounting to eight hundred and thirty-four dollars and nine cents, for which debt, with interest, the complainants recovered a judgment against him, in the Passaic Circuit, on the fourth of December, 1854, the suit having been commenced on the twenty-third of October, 1854.
About six months after his removal to Ohio, the said Andrew abandoned the business established by him there, and sold out his stock in trade to two of his sons, the greater part of it to the defendant, and took from him in payment the promissory notes of the defendant, then being a minor of about seventeen years of age.
On the twenty-second of November, 1854, the said Andrew Montgomery confessed a judgment in the Supreme Court of this state to his son, George W. Montgomery, for eight hundred and forty-one dollars and eighty-three cents, upon which a writ of execution was issued, and by virtue thereof, the remaining interest of the said Andrew in the lot leased to his daughter was levied upon and sold.
The bill charges that the deed so made to the defendant was voluntary; that it was made at a time when the said Andrew had determined to engage in mercantile business, and when he knew that he would be compelled to make large purchases of goods on credit for lack of capital, and that the conveyance was made in contemplation of such indebtedness. The bill prays that the defendant may be decreed to pay the judgment of the complainants, or that it may bo declared a lion upon the real estate so conveyed to him as aforesaid.
The only material averments made by the defendant in his answer are, that at the time of the conveyance to him by his father, the said Andrew was free from debt; that the deed was made in good faith, in performance of a promise long previously made, and not in contemplation of any indebtedness to be incurred upon his engaging in business; and that his withdrawal from business, and consequent fail *110 ure to pay the complainants’ debt, was occasioned by illness, which resulted in his death in the month of September, 1855. The defendant came of age since the commencement of this suit.
There is no controversy as to the material facts of the case. They are all admitted or clearly established by the evidence. The examination of Andrew Montgomery, taken in a cause wherein he was defendant at the suit of these complainants, by virtue of an order of a justice of the Supreme Court, under the act to prevent fraudulent trusts and assignments, (Nix. Dig. 251) is not per se competent evidence.
It is not competent as the testimony of a deceased witness in a former action, for the cause is not between the same parties. Nor as the admission of a privy in blood ox- ixx estate. The defendant does xxot claim title to the land in question by descent from his father, but by alienation. The statements were made after the conveyance was made and the estate vested in the defendaixt. Such declarations caix affect the alienee oixly where they were made while the estate continued in the party making them. No admission or declaration made by a grantor after the conveyance of the estate is evideixce against his grantee. Qreenl. Nv., § 189.
The examination is however rendered competexxt by the subsequent examination of Ebenezer Moxxtgomery, who was present at and heard read the examination of his father, and assented to the truth of its statemeixts. The facts stated, therefore, by the father, so far as they are within the knowledge of the defendant, are admitted by him to be true.
It appears, by the evideixce, that at the date of the deed the grantor was unembarrassed by debt. He was seized of real estate of the value of five thousand five hundred dollars, and possessed of personal property of the value of less than one thousand dollars. He leased a house and lot, valued at fifteen hundred dollars, to his daughter for twenty-one years, at the nominal yearly rent of ten dollars a year. He conveyed the Parke street property, worth four thousand dollars, to his son, the defendant, in fee, for the consideration *111 of five hundred dollars, paid not to himself, but to- another of his children. At the date of the deed, he had rented a store, and made arrangements for engaging in mercantile business. Immediately after the date of the deed, he embarked a capital of two thousand dollars in business, at least one half of which was raised upon credit. The debt due to the complainants was incurred in little more than a month after the date of the deed. The deed must have been made in contemplation of future indebtedness, for at the time of executing it, arrangements had been made for engaging in business requiring over two thousand dollars, while the defendant had less than one thousand dollars to embark in the business, and no source from which the money could be raised, except upon loan or by way of credit. This is the case made by the bill, viz. that the deed to the defendant from his father was voluntary, and made in contemplation of future indebtedness.
It is not necessary that a man should be actually indebted at the time he makes a voluntary conveyance to make it fraudulent. If he does it with a view to his being indebted at a future time it is equally fraudulent. Stileman v. Ashdown, 2 Atk. 481; Shep. Touch. 66; 1 Story’s Fq. Jur., § 361, 362; Sexton v. Wheaton, 8 Wheat. 229; Reade v. Livingston, 3 Johns. Ch. R. 500; and see 1 Am. Lead. Cas. 36, note to Sexton v. Wheaton; Roberts on Fraud. Con. 25.
In Ridgeway v. Underwood, 4 Wash. C. C. R. 137, Mr. Justice Washington thus states the result of the cases upon this subject: “A voluntary deed by a person indebted at the time to any amount, is fraudulent and void as to such prior creditors merely upon the ground that he was so indebted. But as to subsequent creditors, the deed is not void for that reason, because it does not necessarily, nor even rationally follow that the conveyance was fraudulently made with intent to hinder or delay creditors, who became such long after the deed was made. But if the case presents other circumstances from which fraud can legally be inferred, the voluntary conveyance will be avoided in favor of a subsequent *112 creditor. Thus if the grantor in a voluntary deed, incurs debts immediately, or so soon afterwards as to warrant a presumption that the deed was made in contemplation of such future indebtedness, it would be difficult to protect such a deed against the charge of fraud.”
Where at the time of the conveyance the grantor is free from debt, and there are no circumstances showing that the deed was made with a view to future indebtedness, the deed can be avoided by subsequent creditors only upon proof of actual fraud. Reade v. Livingston, 3 Johns Ch. R. 502; Bank of the U. S. v. Housman, 6 Paige 526; Ridgeway v. Underwood, 4 Wash. C. C. R. 137.
Aside from the fact that the deed to the defendant was made by the father in contemplation of future indebtedness, there are strong circumstances indicating the existence of actual fraud. The deed was made on the eve of the grantor engaging in mercantile business, which would require for its successful pursuit both capital and credit. He disposed, at the time of the conveyance, of the entire control of his real estate, which constituted the bulk of his property, leaving himself an inadequate capital for conducting his business or raising loans.. The credit which he obtained was due to his former standing as a man of responsibility. The conveyances to his children were not advancements adapted to the means and. situation in life of the grantor — they absorbed his whole property. The deed to the defendant was made while he was an infant but sixteen years of age, not needing an advancement, and not of discretion to take charge and management of the property. It was kept secret for more than a year, and was not left at the office to be recorded till the day after a suit at law was commenced by the complainants for the recovery .of,,,their debt. Within six months after engaging' in, business, the, entire stock in trade of'the father was divided betweehVtwp of his sons. The larger part of it, amounting, to ever-.eight hundred dollars, was taken by the defendant,' and 'the price paid by the defendant’s own notes while he,v-asl ,und.er ’age. These circum *113 stances are strong badges of fraud, and in the absence of decisive proof that the deed was made in contemplation of indebtedness to be incurred, would be proof of actual fraud sufficient to avoid the conveyance. It is not necessary, however, to place the complainants’ title to relief upon this ground. The evidence is clear that the conveyance to the defendant was made in contemplation of future indebtedness, and is therefore constructively fraudulent as against the claim of the complainants. They are entitled to relief according to the prayer of their bill.
I find no satisfactory proof that any consideration whatever was paid for the deed by the defendant. He had, it is evident, nothing to pay with. The deed, I incline to think, is purely voluntary, without any consideration whatever, or at least a merely nominal one. 1 should, therefore, have no hesitation in setting the deed aside. The complainants’ hill, however, asks not to avoid the deed, but to subject the property in the hands of the defendant to the debt of the complainants. This course is in accordance with the practice of the court. Boyd v. Dunlap, 1 Johns. Ch. R. 478; Wickes v. Clarke, 8 Paige 161; 1 Am. Lead. Cas. 49; Sexton v. Wheaton, 8 Wheal. 229.
The debt will be declared a charge upon the land at the date of the conveyance, and if necessary, a sale will he ordered to satisfy the encumbrance.
The conveyance of the property, alleged to have boon made by the defendant since the filing of the bill, cannot affect the complainants’ rights. Notice of the pending of the suit was duly filed in the clerk’s office of the county pursuant to the requirements of the statute.